[Nos. 11073, 11293.   Department Two.   December 13, 1913.]

THE STATE OF WASHINGTON, on the Relation of Great Northern Railway Company, Appellant, v. PUBLIC SERVICE COMMISSION OF WASHINGTON et al., Respondents.

THE STATE OF WASHINGTON, on the Relation of Chicago, Milwaukee & Puget Sound Railway Company, Appellant, v. PUBLIC SERVICE COMMISSION OF WASHINGTON et al., Respondents.[1]

CARRIERS—REGULATION — PUBLIC SERVICE COMMISSION — PROCEEDINGS—APPEAL—NOTICE. Laws 1911, p. 596, § 86 (3 Rem. & Bal. Code, § 8626-86), providing that writs of review to review "any" order of the public service commission relating to rates must be applied for within thirty days after service of the order, is not limited to final orders, and a writ is properly quashed if not taken out within such time.

SAME—APPEAL—FINAL ORDERS. An order of the public service commission after a full hearing directing joint rates to be put in force between certain points, and giving ten days to comply therewith and agree upon the joint rates, is a final order, from which a writ of review must be issued within thirty days.

SAME—REGULATION OF RATES—JOINT RATES—POWERS OF PUBLIC SERVICE COMMISSION. The public service commission has power to apportion joint rates between common carriers, under Laws 1911, p. 574, § 57 (3 Rem. & Bal. Code, § 8626-57), providing that, when the commission, after a hearing, is satisfied that the joint rates in force between two or more railroads are unjust, unreasonable or excessive, or that no satisfactory through route or joint rate exists,

[1]Reported in 137 Pac. 132.

it may order the railroads to establish such joint rate which will be fair, just, and reasonable, to be collected in the future, and may order carload freight to be carried through without being transferred, etc., making rules for the expeditious and safe return and proper compensation for the cars loaded by the company receiving the same.

CONSTITUTIONAL LAW—DUE PROCESS—TAKING PROPERTY WITHOUT COMPENSATION—CARRIERS—REGULATION OF RATES. Laws of 1911, p. 574, § 57 (3 Rem. & Bal. Code, §8626-57), providing that when the commission, after a hearing, is satisfied that the joint rates in force between two or more railroads are unjust, unreasonable or excessive or that no satisfactory through route or joint rate exists, it may order the railroads to establish such joint rate as will be fair, just, and reasonable, to be collected in the future, and may order carload freight to be carried through without being transferred, etc., making rules for the expeditious and safe return and proper compensation for the cars loaded by the company receiving the same, is not violative of the state constitution or the fourteenth amendment of the Federal constitution in that it is a taking of property without due process of law or a taking or damaging of private property for public use without compensation first being made.

CARRIERS—REGULATIONS—RATES—ESTABLISHMENT BY PUBLIC SERVICE COMMISSION—APPEAL—REVIEW. Findings of the public service commission on expert evidence, upon a hearing to establish joint rates, should not be disturbed on appeal unless they show arbitrariness and disregard of the material rights of the parties.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered January 4, 1913, upon findings in favor of the defendant, in consolidated actions to establish joint rates, sustaining an order of the public service commission. Affirmed.

*F. M. Dudley* and *F. V. Brown*, for appellants.

*The Attorney General* and *Stephen V. Carey, Assistant,* for respondents.

MORRIS, J.—It is sought by this appeal, covering consolidated cases, to reverse the decree of the lower court sustaining an order of the public service commission, establishing joint rates between South Tacoma and points on appellants' lines; and a second order dividing revenues arising from the joint rates thus established between the participating

carriers, made after the appellants' failure to comply with
the first order and adjust their tariffs in conformity with the
conclusions first reached by the commission. South Tacoma
is the name of a station located at the south end, but within
the corporate limits, of the city of Tacoma; and, within its
contributing territory, are a number of manufacturing estab-
lishments requiring the shipment of their products in carload
lots to points on appellants' lines.

The only railway line reaching this territory is the North-
ern Pacific. The Great Northern, under a contract with
the Northern Pacific, has acquired the privilege of running
its trains between Tacoma and Portland over the line of the
Northern Pacific, passing through South Tacoma; but under
this arrangement with the Northern Pacific has acquired no
rights for the transaction of business at South Tacoma, so
that freight from and destined to points on the Great North-
ern would be hauled between Tacoma and South Tacoma by
the Northern Pacific and charged for as local freight. The
Chicago, Milwaukee & Puget Sound Railway Company has
no arrangement with the Northern Pacific for the use of
tracks at South Tacoma, but has a physical connection with
the tracks of the Northern Pacific at Tacoma, and shipments
to and from points on its line were compelled to pay the local
traffic between Tacoma and South Tacoma. It was found by
the commission that the terminals of these several lines enter-
ing Tacoma were centrally located and that the territory
served by the South Tacoma station was no further distant
from the Tacoma terminals than other portions of the city of
Tacoma included within the switching district of Tacoma,
and the freight rate to and from Tacoma.

The first order complained of was made November 18, 1911,
and directed that joint rates should be put in force between
the Northern Pacific and appellants, under which carload
lots would be carried to and from South Tacoma and points
on the lines of appellants at the same rates charged for like
commodities under the Tacoma tariff, in cases where, under

their tariff, appellant absorbed the switching charges to and from industries on Northern Pacific tracks at Tacoma; and in cases where such switching charges were not absorbed, a charge of not to exceed five dollars per car was to be added to the joint rate; providing, however, that none of the joint rates ordered should apply between South Tacoma and Northern Pacific and Great Northern and Northern Pacific and Milwaukee competitive points.

Under this order, the railway companies were given ten days after service of the order upon them to comply with its terms and agree upon the joint rates, it being further provided that, in case of their failure so to agree, the public service commission would itself, by a supplemental order, establish such rates and fix the division between the respective carriers. On December 20, 1911, the carriers having failed to agree upon a division of the joint rates, the commission notified them that a further hearing would be had on January 3, 1912, to hear evidence touching the proper division of the joint rates. This hearing was had on January 8, and on the same day the commission made its order dividing the joint rates by giving to the Northern Pacific two cents per hundred pounds, with a minimum of six dollars per car and a maximum of ten dollars per car; and the balance of the rate was to be apportioned to the Great Northern and Milwaukee. These are the orders attacked by the appeal. They apply, of course, only to traffic wholly within the state.

Section 86 of the public service commission act, page 596, Laws 1911, provides:

"Any complainant or any public service company affected by any order of the commission, and deeming it to be contrary to law, may, within thirty days after the service of the order upon him or it, apply to the superior court of the county in which such proceeding was instituted for a writ of review, for the purpose of having its reasonableness and lawfulness inquired into and determined." (3 Rem. & Bal. Code, § 8626-86).

The writs of review in these cases were sued out in the lower court within thirty days after the service of the order of January 8, 1912, but not within thirty days after the service of the order of November 18, 1911.  The state thereupon moved the lower court to quash the writs in so far as they sought to review the order of November 18, 1911, upon the ground that they had not been sued out within thirty days after the service of the order, which motions were granted.

This ruling is sustained.  Appellants argue that the words "any order," as used in § 86, should be interpreted to mean only final orders.  This contention is disposed of in *State. ex rel. Railroad Commission v. Oregon R. & Nav. Co.*, 68 Wash. 160, 123 Pac. 3, where it was held that the provisions of this section are so plain as to admit of no argument as to their meaning.  The legislature has not limited the right of review to final orders, but has conferred that right, and fixed a limit within which it may be exercised, upon any order of the commission which is deemed contrary to law, "for the purpose of having its reasonableness and lawfulness inquired into and determined."  That the legislature has a right to provide for the review of any order must be admitted ; and when it has in express terms done so, it is not for the courts to say that such review should be, not from any order as in the language of the act, but only from any final order.  This would mean a judicial amendment of the act which, doubting our power, we are not disposed to make.  At all events, the order of November 18 was a final order to all intents and purposes.  It fully covered and disposed of the matter before the commission.  It required nothing to make it effectual, and, had it been complied with by appellants, would have ended the matter.  That it did not end the matter was not because of its lack of finality, but because, appellants, having failed to observe its mandate, subsequent action to enforce it became necessary on the part of the commission.  Suppose a court of equity should in its decree order the execution and delivery of a deed, providing that, if the order was not complied with in

ten days, a supplemental decree would be issued directing such execution by a commissioner then to be appointed, could it be contended that the decree did not become final until the supplemental decree was entered? Or that the time for appeal began to run from the entry of the supplemental decree and not from the entry of the original decree?

It is next urged that the commission has no power to apportion the joint rates between the carriers. As the only power vested in the commission in this regard, appellants cite § 83 of the act (Id., § 8626-83), providing that, when any order of the commission shall require joint action by two or more public service companies, the order shall specify that it shall be done at their joint cost, and if, within a given time, the companies fail to apportion such costs between themselves, the commission shall have authority after hearing to enter an order fixing the proportion of such cost to be borne by each company. Counsel for appellants argue that the only authority conferred upon the commission by this section is to apportion costs. That may be granted. This section does not touch the question at issue, since it manifestly relates to the cost or expense of complying with an order of the commission requiring joint action on the part of two or more public service corporations. This section plainly refers to some physical connection between the respective companies. It speaks of operation, maintenance, and joint service, thus clearly indicating that something other than the fixing of rates was in the legislative mind. There was no necessity of again taking up the question of railway rates and the power sought to be conferred upon the commission in this regard, for the legislative will in this particular had been fully written in § 57, providing:

"Whenever the commission shall be of opinion, after hearing had upon its own motion or upon complaint, that the rates and charges in force over two or more railroads, between any two points in the state, are unjust, unreasonable or excessive, or that no satisfactory through route or joint rate exists between such points, and that the public necessi-

ties and convenience demand the establishment of a through route and a joint rate between such points, the commission may order such railroads to establish such through route, and may establish and fix a joint rate which will be fair, just, reasonable and sufficient, to be followed, charged, enforced, demanded and collected in the future, and the commission may order that carload freight moving between such points shall be carried by the different companies, parties to such through route and joint rate, without being transferred from the originating cars. In case no agreement exists between such railroads for the interchange of cars, then the commission, before making such order, shall be empowered to, and it shall be its duty, make rules for the expeditious and safe return and proper compensation for the cars so loaded by the company or companies receiving the same." Laws 1911, p. 574, § 57 (Id., § 8626-57).

Appellants contend that this section is violative of the Fourteenth Amendment of the Federal constitution, in that it is a taking of property without due process of law, and likewise infringes upon § 16, art. 1, of the state constitution, prohibiting the taking or damaging of private property for public or private use without compensation first being made. We cannot follow appellants' argument in support of this contention, as we fail to see how this section in any sense provides for a taking or damaging of private property for public use or appropriates property without due process of law. Appellants, by virtue of their public character and in order to carry out the purpose of their organization, have voluntarily devoted all their property to public use, and for this reason it has always been regarded that public service corporations of this character are subject to special limitations by law, as to their rates and charges and as to the manner of the discharge of their public duties. The regulation of rates by the state has never been regarded as a taking of property without due process of law, nor as a taking or damaging without compensation.

The constitutionality of statutes delegating power to public service companies to establish and regulate joint rates of

independent and connecting common carriers is expressly established in *Minneapolis & St. L. R. Co. v. Minnesota*, 186 U. S. 257. Nor is there anything indicative of a contrary view expressed in *Louisville & N. R. Co. v. Central Stock Yards Co.*, 212 U. S. 132, relied upon by appellants as sustaining their contention that rolling stock is property within the meaning and protection of the Federal and state constitutions, and that any requirement by the state that one carrier turn over such property for the use of another is a taking. We cannot find that this last question is involved in this case, as the orders appealed from make no reference to any interchange of cars, nor is there any requirement that one of these carriers shall turn over any portion of its rolling stock for the use and benefit of the other. The orders establish a joint rate for a given service, and apportion that rate between the connecting carriers, leaving to the carriers the convenient and practicable way of complying with the order, either by sending the loaded cars through to their destination or transferring the load from the cars of one carrier to those of the other at the connecting point. The order applies to rates only, and makes no reference to service in the sense spoken of. So far, however, as § 57 confers power upon the commission to order an interchange of cars between connecting carriers in case no agreement for such interchange exists between the carriers, it will be noted that this power is to be exercised, (1) when the rates in force between the given points are unjust and excessive; (2) where there is no satisfactory through route and joint rate; (3) when the public necessities and convenience demand the establishment of a joint rate and through route; and (4) when, before the making of such order, the commission shall have made rules and regulations for the expeditious and safe return and proper compensation for the cars so employed.

Referring now to the facts of the *Central Stock Yards Co.* case, we find that there were two stock yards located in the city of Louisville. The Central stock yards were the stock

terminals of the Southern Railway; the Bourbon stock yards were the stock terminals of the Louisville & Nashville Railroad. An effort was made to require the Louisville & Nashville Railroad to make delivery of cars at the Central stock yards instead of at its own terminals, the Bourbon stock yards. In holding that the Louisville & Nashville road could not be required to do this, the court, at page 143, says:

"It was argued, however, that the requirement that the plaintiff in error should deliver its own cars to another road was void under the Fourteenth Amendment as an unlawful taking of its property. In view of the well known and necessary practice of connecting roads, we are far from saying that a valid law could not be passed to prevent the cost and loss of time entailed by needless transshipment or breaking bulk, in case of an unreasonable refusal by a carrier to interchange cars with another for through traffic. We do not pass upon that question. It is enough to observe that such a law perhaps ought to be so limited as to respect the paramount needs of the carrier concerned, and at least could be sustained only with full and adequate regulations for his protection from the loss or undue detention of cars, and for securing due compensation for their use. The constitution of Kentucky is simply a universal undiscriminating requirement, with no adequate provisions such as we have described. The want cannot be cured by inserting them in judgments under it. The law itself must save the parties' rights, and not leave them to the discretion of the courts as such. . . . It follows that the requirement of the state constitution cannot stand alone under the Fourteenth Amendment, and that the judgment in this respect also, being based upon it, must fail. We do not mean, however, that the silence of the constitution might not be remedied by an act of legislature or a regulation by a duly authorized subordinate body if such legislation should be held consistent with the state constitution by the state court."

Now, referring again to § 57, it will be noted that it provides for the very thing the opinion in the *Central Stock Yards Co.* case indicates would destroy the objectionable feature of the order sought, in providing for the expeditious return and proper compensation for the cars used in the in-

terchange. It will also be seen, by referring to the last sentence of the quoted opinion, that the court does not hold that the silence of the constitution might not be remedied by appropriate legislative act or by regulation of a duly authorized subordinate body, when such legislation is consistent with the state constitution. It seems to us we have this remedial provision in the establishment of the public service commission, with the power conferred and regulation fixed for its exercise in § 57, and that no showing can be made that such power so conferred and so to be exercised is inconsistent with any constitutional provision.

Appellants attack the sufficiency of the evidence, the joint rate, and its division between the connecting carriers. We find no merit in these contentions. Inquiries of this nature depend altogether upon expert evidence and, we might add, expert findings, and the state has conferred the power upon the commission to determine the merits of the controversy, and its findings should not be disturbed unless they show evidence of arbitrariness and disregard of the material rights of the parties to the controversy. Such decisions are peculiarly within the province of the commission to make, and "its findings are fortified by presumptions of truth due to the judgments of a tribunal appointed by law and informed by experience." *Interstate Commerce Commission v. Chicago, R. I. & P. R. Co.*, 218 U. S. 88. We repeat what we said in *Puget Sound Elec. R. v. Railroad Commission*, 65 Wash. 75, 117 Pac. 739, Ann. Cas. 1913 B. 763:

"The inquiry was of such a nature as to call largely for expert testimony, and the findings made are necessarily of the same nature. In such case great consideration should be given the findings of that body to whom the state has primarily given the right and authority to determine questions of this character. Such findings should not be disturbed unless they bear evidence of having been arbitrarily reached and without a full and due consideration of all the controlling facts. Their determination calls for the exercise of economic as well as legal principles. Courts may well review the ques-

tions submitted, in so far as they suggest the application of legal principles. In so far as they suggest the enunciation of proper economic rules, they must defer largely to those who, by study, experience, and calling, are in a better situation to determine what is and what is not a proper method of determination."

Appellants submit a late decision of the Interstate Commerce Commission, made June 13, last, in the case of *Manufacturers R. Co. v. St. Louis, I. M. & S. R. Co.*, not yet reported, as supporting their contention of lack of power in the commission to establish joint rates. We cannot find anything in that case that is decisive of any point here involved contrary to any conclusion we have reached. That the decision was not so intended is manifest from the fact that the Interstate Commerce Commission has on two occasions reviewed the joint rate order here involved in so far as it applies to interstate traffic, and in each instance has sustained it, not because the state commission had reached the same conclusion respecting state traffic, but because the Interstate Commerce Commission held the through charges resulting from the exclusion of South Tacoma from the Tacoma switching district were excessive, and that any joint rate on interstate traffic to and from South Tacoma in excess of the differential over the Tacoma rates proposed by the state commission on such traffic would be unreasonable, and with that view required the Northern Pacific Railway Company and appellants to establish joint through rates. *Public Service Commission v. Northern Pac. R. Co.*, 23 I. C. C. 256; *Id.*, 26 I. C. C. 272. We refrain from further discussion, believing that the orders of the commission were in all things proper and within the power conferred upon the commission.

The judgment is affirmed.

CROW, C. J., PARKER, and MOUNT, JJ., concur.

FULLERTON, J., concurs in the result.