[No. 20554.  Department One.  May 31, 1927.]

NORTHERN PACIFIC RAILWAY COMPANY et al., *Appellants*, v. DEPARTMENT OF PUBLIC WORKS, *Respondent*.[1]

[1] CARRIERS (1)—REGULATION—CERTIFICATES OF PUBLIC NECESSITY. Under Rem. Comp. Stat., § 6389, the department of public works, in awarding certificates of public convenience and necessity for stage routes, may properly consider the needs for the immediate future, expected to continue for several years, and its finding that an extension of service "is required," supported by abundant evidence of present increased activities by reason of prospective work, is a finding as to the present fact, and not objectionable as based upon contingencies of the future.

[2] SAME (1).  The extension of bus service is warranted where the route serves a farming community on the line of a state highway and farms seven or eight miles from the nearest railway station.

[3] SAME (3-4)—ORDERS OF DEPARTMENT OF PUBLIC WORKS—REVIEW ON APPEAL.  Findings of the department of public works upon granting certificates of public convenience and necessity for stage lines will not be reviewed by the courts in the absence of a showing of unfair and arbitrary action.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered December 30, 1926, affirming an order of the department of public works, extending certificates of public convenience and necessity to carriers.  Affirmed.

[1]Reported in 256 Pac. 333.

*Geo. T. Reid* and *L. B. da Ponte*, for appellants.

*The Attorney General, H. C. Brodie, Assistant,* and *Cleland & Clifford,* for respondents.

MITCHELL, J.—This is an appeal from a judgment of the superior court of Thurston county, affirming an order of the department of public works granting extensions of existing certificates of convenience and necessity to the Washington Motor Coach Company and the Roslyn-Cle Elum Transportation Company. A number of other applications for original certificates or for extensions of existing certificates of convenience and necessity over the same or adjacent territory were heard and disposed of at the same time by the department, but only those two above named are objected to on this appeal by the Northern Pacific Railway Company, the Chicago, Milwaukee & St. Paul Railway Company and the American Railway Express Company, who have been protestants from the commencement of the proceeding before the department of public works.

The pertinent portions of the findings made by the department are as follows:

"V.   C. M. Dunn, Andrew Dean and B. Marchetti, operating under the trade name of Roslyn-Cle Elum Transportation Company, are the owners of certificate of public convenience and necessity No. 328, authorizing passenger and express service between Cle Elum, Roslyn and Lake Cle Elum, Washington. On January 9, 1926, the said Roslyn-Cle Elum Transportation Company applied for authority to extend the rights under its certificate No. 328, so as to furnish passenger and express service between Cle Elum and Easton, Washington.

"VI.   The Washington Motor Coach Company, Inc., is the holder of certificate No. 400, authorizing passenger and express service between Yakima, Ellensburg and Wenatchee, Chelan, Waterville, Almira and

Leavenworth, Washington. On February 4, 1926, the Washington Motor Coach Company, Inc., made application for authority to extend the rights under its certificate No. 400 so as to furnish passenger and express service to Cle Elum and Easton, Washington.''

As we understand, finding number X in one respect is that, under normal conditions, the present rail service to and from Easton, a town having a population of approximately 300, is adequate and sufficient for the public needs of that community. But in finding number X it is further stated:

''At the present time, however, the district around Easton is far from normal. The construction of the Kittitas Reclamation Project is assured. The diversion dam will be located on the Yakima river about one-half mile above Easton. From this point twenty-seven miles of high line canal will be constructed. About two hundred men will be employed on each unit of four miles. Bids on the first unit were called for April 29th, and it may be assumed that construction will be under way in the very near future. The State of Washington is now constructing a bridge at Vantage Ferry. A large hydro-electric plant is under construction at Chelan, Washington. The Great Northern Railway is constructing a tunnel through the Cascades west of Wenatchee. There will undoubtedly be a continuous movement of workmen between these various construction jobs and to and from the neighboring towns including Cle Elum, Ellensburg, Yakima and Wenatchee. Cle Elum is the nearest town of any size to the main canal of the Kittitas Reclamation Project and will probably be the center of this activity. Many workmen employed on said project will live at Cle Elum and Roslyn. Coal miners in the Roslyn district will likely seek employment on such project during the slack period at the mines. Workmen living at the camp at Easton will desire transportation to Cle Elum on Sundays and holidays.''

''XI. The Washington Motor Coach Company, Inc., in its operations between Ellensburg and Wenatchee

via the Blewett Pass Highway passes Verdon Corner located approximately twelve miles east of Cle Elum. As stated above, Cle Elum, including South Cle Elum, has a population of more than three thousand, Roslyn a population of approximately two thousand. Cle Elum and Roslyn are logically a part of the Ellensburg district. An extension of the Washington Motor Coach Company's service to Cle Elum, connection with the service of the Roslyn-Cle Elum Transportation Company at such point will mean connecting these communities with transportation service to Ellensburg, Yakima, Wenatchee, Chelan and Vantage Ferry. It will provide transportation for students at the Ellensburg Normal living in the Cle Elum and Roslyn districts.

"XII.    From the evidence submitted, we find that public convenience and necessity requires an extension of the service of the Washington Motor Coach Company, Inc. under its certificate No. 400 to Cle Elum, Washington. We further find that during the period of the construction of the Kittitas Reclamation Project, public convenience and necessity will require an extension of the service of the Washington Motor Coach Company, Inc. to Easton (or the proposed dam site of the Kittitas Reclamation Project) connecting such point with a transportation service to Cle Elum, Ellensburg, Yakima, Wenatchee and Vantage Ferry. We further find that during such construction period public convenience and necessity will require a local passenger and express service by means of motor propelled vehicles between Roslyn, Cle Elum and Easton (or the proposed dam site). We are of the opinion that Messrs. Dunn, Dean and Marchetti (operating under the trade name of Roslyn-Cle Elum Transportation Company) can furnish a more convenient and economical local service between these points than can the other applicants herein. Order will be entered granting the Roslyn-Cle Elum Transportation Company authority to furnish a local passenger and express service between Roslyn and Cle Elum on the one hand and Easton on the other hand during such construction period. Such order will also

grant the Washington Motor Coach Company, Inc., authority to extend its service under certificate No. 400 to Easton, Washington, during such construction period. It is impossible at this time to determine the amount of local service necessary between Easton and Cle Elum, Washington. The department will, therefore, retain jurisdiction to alter, limit or prohibit. the furnishing of a local service between Cle Elum and Easton on the part of the Washington Motor Coach Company, Inc., should it appear that the rendering of the same endangers or greatly interferes with the local service of Messrs. Dunn, Dean and Marchetti herein authorized between such points. After the completion of the Kittitas Reclamation Project the department will hold further hearing or hearings and then and there determine whether or not public convenience and necessity requires the continuance of motor vehicle service between Cle Elum and Easton.''

Pertinent portions of the order of the department involved on the appeal are as follows:

''WHEREFORE IT IS ORDERED that certificate of public convenience and necessity No. 400 standing in the name of the Washington Motor Coach Company, be and the same is hereby amended to authorize the furnishing of passenger and express service by means of motor propelled vehicles to Cle Elum, Washington, in addition to the service now authorized under said certificate.

''IT IS FURTHER ORDERED that during the construction period of the Kittitas Reclamation Project, the Washington Motor Coach Company, Inc., owner of certificate of public convenience and necessity No. 400, be and it is hereby authorized to extend the passenger and express service under said certificate to include. service to Easton, Washington (or the proposed dam site of the Kittitas Reclamation Project), the department reserving jurisdiction to alter, limit or prohibit the furnishing of a local service on the part of said company between Cle Elum and Easton as set out in Finding XI hereof.

''IT IS FURTHER ORDERED that during the construc-

tion period of the Kittitas Reclamation Project, Messrs. G. M. Dunn, Andrew Dean and B. Marchetti, owners of certificate of public convenience and necessity No. 328, be and they are hereby authorized to extend the passenger and express service under said certificate from Cle Elum to Easton, Washington (or the proposed dam site of the Kittitas Reclamation Project).

"Upon the completion of the Kittitas Reclamation Project, the department will hold further hearing or hearings and then and there determine whether or not public convenience and necessity requires the continuance of motor vehicle service between Cle Elum and Easton, Washington."

The findings further show that the Northern Pacific Railway Company operates five passenger trains a day each way between Ellensburg, Cle Elum and Easton and that the Chicago, Milwaukee & St. Paul Railway Company operates two trains a day each way between Ellensburg and Easton passing through South Cle Elum, only one of which stops at Easton. The cities of Ellensburg, Cle Elum and Easton are on the Sunset Highway and the extension granted the Washington Motor Coach Company is over the highway from the point of its intersection with the Blewett Pass highway about twelve miles east of Cle Elum, thence easterly towards that city and Easton. The portion of the highway to be covered by the Roslyn-Cle Elum Transportation Company is between Cle Elum and Easton.

[1] Upon the contention that, under the statute, the department was not authorized to speculate as to future convenience and necessity, but could grant a certificate only upon a showing of present convenience and necessity, the appellants argue that the department does not find that such a necessity existed at the time of the application or hearing, but that, on the con-

trary, it finds there is no necessity at the present time but that there may, or will, be such necessity, if and when construction on the Kittitas Reclamation Project shall be commenced. However, we have seen that finding number XII says:

"From evidence submitted we find that public convenience and necessity requires an extension of the service of the Washington Motor Coach Company under its certificate number 400 to Cle Elum, Washington."

This is a finding as of the present time, and the order provides accordingly. While it is true that the findings and order provide for the extension of service from Cle Elum to Easton or to the dam site during the construction period of the reclamation project, there was abundant evidence of increased activities in that section already on account of the proposed improvement, and the order of the commission in that respect is simply to provide for the occasion, not transient or temporary in the ordinary sense but, under the evidence, lasting through several years with the reasonable result, under the testimony, that after the improvement is completed that section will be permanently occupied by a greater number of persons than formerly needing the services and conveniences of auto transportation lines. Under the broad regulatory powers and duties conferred and imposed upon the department by § 3, ch. 111, Laws 1921, p. 340 [Rem. Comp. Stat., § 6389], providing for additional supervision and regulation of the transportation of persons and property for compensation over public highways by motor propelled vehicles, among other things, to supervise and regulate auto transportation companies in all matters affecting the relationship between such auto transportation companies and the travelling and

shipping public, it cannot be said that the order in this respect is without authority. It rests upon substantial testimony and, if the situation contemplated by the findings and order should not occur, no harm will have been done on account of the order; while, on the other hand, if the development does occur, which appears to be reasonably certain, it will be well that at that time all controversy over a certificate of convenience and necessity shall have been settled and disposed of. The principle and procedure are similar to that announced in the case of *Wabash, C. & W. R. Co. v. Commerce Commission*, 309 Ill. 412, 141 N. E. 212.

"The Commerce Commission has a right to, and should, look to the future as well as to the present situation. Public utilities are expected to provide for the public necessities, not only today, but to anticipate for all future developments reasonably to be foreseen. The necessity to be provided for is not only the existing urgent need, but the need to be expected in the future, so far as it may be anticipated from the development of the community, the growth of industry, the increase in wealth and population, and all the elements to be expected in the progress of a community."

[2] The further contention is made that the appellants were entitled to an opportunity to furnish transportation, if anticipated demands of the public for it should materialize, before a competing carrier was licensed to enter the field. There is no statutory requirement to that effect and, upon the whole record, we find nothing to indicate that the commission has been arbitrary or that it acted other than within the law and according to its best judgment towards the contestants and the public. The evidence shows that the stretch of the Sunset Highway over which the motor bus service has been extended is situated some considerable distance from the nearer of the two rail-

way lines and is settled by a large number of well improved farms immediately upon the highway, some of which are seven or eight miles from the nearest station, and that other enterprises are similarly situated and that they, together with the general public who deal with them, need services and conveniences that the motor transportation can supply and which the railroads cannot furnish, and that such demands are increasing.

[3] Lastly, it is contended that the findings of convenience and necessity are not supported by the evidence. The record shows that a large number of witnesses, well situated to speak upon the subject, testified to the contrary and with considerable detail showing convenience and necessity for the extension of service granted by the order. By a long line of decisions including *Puget Sound Elec. R. Co. v. Railroad Commission*, 65 Wash. 75, 117 Pac. 739, Ann. Cas. 1913B 763; *State ex rel. Great Northern R. Co. v. Public Service Commission*, 76 Wash. 625, 137 Pac. 132; *State ex rel. Seattle v. Public Service Commission*, 103 Wash. 72, 173 Pac. 737; *State ex rel. Seattle v. Public Service Commission*, 114 Wash. 646, 195 Pac. 1015; *State ex rel. B. & M. Auto Freight v. Department of Public Works*, 124 Wash. 234, 214 Pac. 164; *State ex rel. United Auto Trans. Co. v. Department of Public Works*, 129 Wash. 5, 223 Pac. 1048; *Pacific Coast Elevator Co. v. Department of Public Works*, 130 Wash. 620, 228 Pac. 1022, we have held that we will not interfere with the findings and action of the department of public works in matters of this kind, in the absence of a showing that the members of the department acted unfairly or arbitrarily and in disregard of the material rights of the parties interested. There is nothing here inconsistent with the view that the department fully considered the testimony in the case

and under the law exercised its honest judgment in disposing of it.

Affirmed. 

MACKINTOSH, C. J., MAIN, and FRENCH, JJ., concur.