## DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY *v.* TOWN OF MORRISTOWN ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 147.   Argued January 6, 9, 1928.—Decided February 20, 1928.

The railroad company constructed a driveway over its station grounds to connect with the streets of the town. The railroad and the town agreed that the driveway should be kept open and that the town should exercise upon the station grounds, etc., all necessary police powers for the regulation of traffic and for the enforcement of the railroad's rules and regulations. The railroad granted a

cabman exclusive right to solicit passengers and baggage in the station grounds and to park his vehicles in the driveway. The town (claiming the right so to do under the contract) declared the space so assigned by the railroad a public hackstand and prohibited parking elsewhere. Other cabmen thereupon entered the grounds and used that space. The railroad objected on the ground that its property was being taken for municipal purposes without compensation. *Held:*

1. The taking of private property for public use is against the common right, and authority so to do must be clearly expressed. The agreement does not empower the town to establish a public hackstand on the company's land. P. 192.

2. Assuming that the creation of a public hackstand upon the station grounds would be a proper exertion of the police power, the due process clause safeguards to the owner of the land just compensation for the use of its property. P. 193.

3. As against those not using it for purposes of transportation, the railroad is private property in every legal sense, and if any part of its land is capable of use that does not interfere with discharge of its obligations as a carrier, the railroad has the right to use or permit others so to use it for any lawful purpose. P. 194.

4. A railroad is not bound to permit persons having no business with it to enter its trains, station or grounds to solicit trade or patronage for themselves, and the grant of such privilege to one does not give rise to any duty to others. P. 194.

5. To compel the use of railroad station grounds for public hackstands without compensation is to take them in violation of the due process clause of the Fourteenth Amendment. P. 195.

14 F. (2d) 257, reversed; District Court affirmed.

CERTIORARI, 273 U. S. 686, to a decree of the Circuit Court of Appeals which reversed a decree of permanent injunction, and directed dismissal of the bill in a suit by the railroad against the town and a number of taxicab men, to prevent the use of its land for the parking of vehicles and enjoin the enforcement of an ordinance designating part of it as a public hackstand.

*Mr. John W. Davis*, with whom *Mr. M. M. Stallman* was on the brief, for petitioner.

Sections 1, 2 and 3 of the ordinance are repugnant to the Fourteenth Amendment because they take petitioner's

property without due process of law.   It is not necessary, in order to render the ordinance vulnerable to constitutional attack, that it must in terms or effect authorize an absolute conversion of property, so long as it affects the free use and enjoyment of the property or the power of disposition at the will of the owner.   *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Penna. Coal Co.* v. *Mahon*, 260 U. S. 393; *Great Northern Rwy.* v. *Minnesota*, 238 U. S. 340.

While the municipality has not in terms deprived petitioner of the title to its lands in establishing the hack stand thereon and in prohibiting the use of other parts of its property for parking space for private vehicles and taxicabs, it has deprived petitioner of the right to use the land according to its own plans, purposes and requirements.   The property of a railroad company cannot be taken or appropriated, under the guise of regulation, except for a purpose within the statutory duties of the carrier.   *Great Northern Rwy.* v. *Minnesota, supra; Great Northern Rwy.* v. *Cahill*, 253 U. S. 71.

Taxicab service is no part of the business of petitioner, and it cannot be compelled to furnish land for a public hack stand under the guise of an exercise of the police power.   *Great Northern Rwy.* v. *Minnesota, supra; Id.* v. *Cahill, supra.*

As to the cab drivers, they have no right to make use of the company's premises, and such a right cannot be conferred upon them by a municipal ordinance.   *Donovan* v. *Pennsylvania Co.*, 199 U. S. 279; *Thompson's Express Co.* v. *Mount*, 91 N. J. Eq. 497.   Cf. *Welsh* v. *Morristown*, 98 N. J. L. 630.   *Munn* v. *Illinois*, 94 U. S. 113; *Union Dry Goods Co.* v. *Georgia Public Service Corp'n*, 248 U. S. 372; *Producers Transportation Co.* v. *R. R. Comm.*, 251 U. S. 228; and *Wolff* v. *Court of Industrial Relations*, 262 U. S. 522, distinguished.

As the railroad company is not required to furnish taxicab facilities, and no charge for such facilities is impliedly included in the rates of fare, and as no compensation is provided for the use of the land devoted to parking of taxicabs, the situation comes squarely within the opinion in *Banton* v. *Belt Line Rwy.*, 268 U. S. 413. See also, *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393.

The ordinance cannot be upheld as securing the performance of a legal duty owing by the railroad company to its passengers, i. e., as a regulation of transportation.

There is nothing in *Welsh* v. *Morristown,* 98 N. J. L. 630, that casts any doubt on the proposition that the town was without jurisdiction under the local law.

The contract of 1912 did not operate to grant to or confer upon the municipality the right to exclude the petitioner from the use of its own land and to establish thereon a public hackstand against its express objection.

Such regulation, however, is appropriate only over a public highway and any intent to dedicate the driveway here in question is negatived by the express terms of the contract. It is well settled under New Jersey law that in the face of an express disclaimer of an intent to dedicate, mere sufferance by an owner of general public user of his premises is insufficient to establish a dedication. *Wood* v. *Hurd,* 34 N. J. L. 87. See also, *Irwin* v. *Dixion,* 9 How. 10; *McKey* v. *Hyde Park,* 134 U. S. 84; *Folkestone Corp'n* v. *Brockman,* A. C. 338.

*Mr. Conover English,* with whom *Messrs. R. H. Mc-Carter* and *N. C. Toms* were on the brief, for respondents.

The establishment of a parking place on the driveway in question was not contrary to the Fourteenth Amendment, but was justified under the police power by the public necessities for the safety, welfare and comfort of the public using the driveway and was authorized under

the express agreement of the railroad company set forth in the contract. This driveway is to all intents and purposes a public street leading to and alongside of a busy railroad station. The fact that only that part of the public having business with the railroad company and those of the public having occasion to go to and from Saw Mill Lane use this driveway, does not deprive it of its public character. *Van Dyke* v. *Geary,* 244 U. S. 39.

The property being devoted to a public use and so clothed with a public interest, is subject to reasonable regulation. *Munn* v. *Illinois,* 94 U. S. 113; *Chicago etc. R. R.* v. *Nebraska,* 170 U. S. 57; *Noble State Bank* v. *Haskell,* 219 U. S. 104; *Missouri Pacific Rwy.* v. *Omaha,* 235 U. S. 121; *Union Dry Goods Co.* v. *Georgia Public Service Corp'n,* 248 U. S. 372; *Producers Transportation Co.* v. *R. R. Comm.,* 251 U. S. 228; *Block* v. *Hirsh,* 256 U. S. 135; *Milheim* v. *Moffat Tunnel Dist.,* 262 U. S. 710.

The railroad by its contract consented to a taking for the purpose of regulating traffic when it opened its driveway to public traffic and permitted the town to exercise all necessary police power upon it to regulate that traffic. *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548; *Welsh* v. *Morristown,* 98 N. J. L. 630.

The general rule is that property may be regulated to a certain extent to protect the public health, safety, welfare, comfort or morals from dangers threatened. It is only when the regulation goes too far that it will be recognized as a taking. *Penna. Coal Co.* v. *Mahon,* 260 U. S. 393.

The town under its police power has power to regulate traffic by ordinance, including the establishment of cab stands. *Donovan* v. *Pennsylvania Co.,* 199 U. S. 279. See also, *Swan* v. *Mayor of Baltimore,* 132 Md. 256; Dillon on Municipal Corporations, Vol. 3 (5th ed.), § 1167.

Nor does the contract between Welsh and the railroad company militate against the power of the town to pass

an ordinance to establish a cab stand as a regulation of traffic. *Thompson's Express Co.* v. *Mount,* 91 N. J. Eq. 497; *Donovan* v. *Pennsylvania Co., supra; Welsh* v. *Morristown,* 98 N. J. L. 630, distinguishing *Thompson's Express Co.* v. *Mount, supra.* See also, *Emerson* v. *Town of McNeil,* 84 Ark. 552; *St. Paul* v. *Smith,* 27 Minn. 364; *Lindsey* v. *Mayor of Anniston,* 104 Ala. 257; *Seattle* v. *Hurst,* 50 Wash. 424; *Williams* v. *Arkansas,* 217 U. S. 79; *Ex Parte Barmore,* 174 Cal. 286; *Ex Parte Maynard,* 98 Tex. Cr. Rep. 204.

The lands taken are devoted to a public use. The driveway constitutes the only street approach to the easterly side of the railroad station and is so clothed with a public interest that it is subject to reasonable regulation with respect to the traffic thereon.

The ordinance was passed pursuant to authority delegated to the town by the legislature of the State and as such it is a state law within the meaning of the Constitution. *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548; *Reinman* v. *Little Rock,* 237 U. S. 171.

The railroad has to a certain extent voluntarily enlarged its duties to include a taxicab service by the contract it made with Welsh. The railroad grants special privileges to Welsh in its station, building and grounds, and receives in return 10% of " the gross receipts from all business to and from said Morristown Station."

The town had the right to pass the ordinance of October 22, 1924, because of the express agreement of the railroad company set forth in the contract of 1912. The establishment of a parking place by the ordinance is within the terms of the contract in that it constitutes a regulation of foot and vehicular traffic at the station. See *Masterson* v. *Short,* 30 N. Y. 241; *The Taxicab Cases,* 143 N. Y. Supp. 279; *Waldorf-Astoria Hotel Co.* v. *New York,* 212 N. Y. 97.

The parties to the suit, namely, the railroad company and the town, by their conduct over a period of ten years practically have construed the contract to empower the town to establish a parking place on the driveway in question. *Van Dyke* v. *Anderson*, 83 N. J. Eq. 568; *Dennis* v. *Jones*, 44 N. J. Eq. 513; *Clampitt* v. *Doyle*, 73 N. J. Eq. 678; *Faulkner* v. *Wassmer*, 77 N. J. Eq. 537.

MR. JUSTICE BUTLER delivered the opinion of the Court.

October 30, 1924, petitioner brought this suit in the district court of New Jersey against the Town of Morristown and sixteen operators of taxicabs to restrain the town from enforcing an ordinance establishing a public hackstand in a driveway on petitioner's station grounds, to prevent the use of its land for parking of taxicabs and other vehicles and to restrain the individual defendants from going on its premises to solicit patronage and from using its grounds as a hackstand.

The Morris and Essex Railroad Company owns the railroad and petitioner operates it as lessee in perpetuity. September 24, 1912, an agreement was made between the town and the companies providing for the elevation of the tracks in order to eliminate certain grade crossings. The agreement was fully performed. The tracks run north and south through station grounds of somewhat irregular shape containing about four acres. The main station building is on the west side of the tracks and on the east side there is a platform roofed over, called the shelter house. The town agreed to lay out and construct a new street extending to the station grounds on the east side of the tracks. The companies agreed to "dedicate any lands owned by them necessary for the laying out of such new street." Petitioner constructed and maintains driveways within its grounds, one of which passes under the tracks along the north boundary and thence south parallel to the tracks and near the east side of the shelter

house to the south boundary of the grounds where it connects with the new street. It was agreed that: "Said driveway shall be kept open at all times for passengers, pedestrians . . . and . . . vehicular traffic to and from the station grounds on the easterly side of said Railroad and for the use of those now having rights of egress to Morris Street in Saw Mill Lane, but this contract shall not be construed as a dedication of said driveway as a public highway." It was further agreed " that the Town may and shall exercise all necessary police powers in and upon the station, station grounds, approaches and driveways, for the purpose of regulating foot and vehicular traffic at said station, and for the enforcement of the rules and regulations of the Railroad Companies in respect thereto."

Passengers arriving on trains from New York get off on the east side and leave the station grounds by the driveway described. Prior to 1922, operators of taxicabs were accustomed to drive into the grounds to meet these trains and there solicit patronage. It is a matter of common knowledge that such competition for the transportation of passengers and their baggage from railway stations is liable, if not indeed certain, to be attended by crowding together of cabmen, confusion, noisy solicitations, importunities and contentions resulting to the annoyance and disadvantage of those sought to be served.* And the record shows that these or similar abuses prevailed or were liable to occur at the Morristown station. December

---

* *Donovan* v. *Pennsylvania Company,* 199 U. S. 279, 295; *Commonwealth* v. *Power,* 7 Metc. 596; *Napman* v. *The People,* 19 Mich. 352. 356; *Dingman* v. *Duluth,* etc. R. Co., 164 Mich. 328, 330–331; *Hedding* v. *Gallagher,* 72 N. H. 377, 395; *Thompson's Co.* v. *Whitemore.* 88 N. J. E. 535, 536; *Railroad* v. *Kohler,* 107 Kan. 673, 677; *Brown* v. *Railroad Co.,* 75 Hun. 355, 362; *Rose* v. *Public Service Commission,* 75 W. Va. 1, 6; *New York, N. H. & H. R. Co.* v. *Scovill,* 71 Conn. 136, 137; 148; *Landrigan* v. *State,* 31 Ark. 50; *Union Depot & Ry. Co.* v. *Meeking,* 42 Colo., 89, 97.

28, 1922, petitioner made an agreement with one Welsh in which it was stated that petitioner desired to establish adequate cab service for the accommodation of its passengers and to regulate the solicitation of business in its station and upon its station grounds and the parking of vehicles there. It granted to him the privilege, under the control of petitioner's manager, to solicit business as a cabman in the station and on its grounds, to have a stand and telephone facilities in the station and to park his vehicles upon a specified space in the driveway east of the shelter house. Welsh agreed to have a sufficient number of vehicles, to maintain them at the highest standard of efficiency and to give satisfactory service at specified rates which should "in no wise exceed the rates now or hereafter prescribed by municipal ordinance." Then, on February 7, 1923, the municipal authorities, conceiving that this agreement created a monopoly and was unjust to other taxicabmen, adopted an ordinance prohibiting the standing of automobiles upon the space set aside for Welsh for "a longer time than is necessary to take on and let off passengers, expressage or baggage", and prohibiting such standing of vehicles on any other part of the driveway. In a suit brought by Welsh against the town the State Supreme Court held this ordinance to be a valid regulation of traffic under general power of the town and under the track elevation agreement. 98 N. J. L. 630, affirmed by the Court of Errors and Appeals, sub nomine Welsh v. Potts, 99 N. J. L. 528. Upon the termination of that litigation, the town, October 22, 1924, passed the ordinance here in question. It declares a space including that set aside by the petitioner for the use of Welsh's vehicles to be "an additional public hackstand" and prohibits the parking of vehicles in other parts of the driveway. Immediately upon the passage of this ordinance, the individual defendants entered the station grounds, parked their vehicles upon the space so designated and solicited patronage.

The petitioner brought this suit claiming that the enforcement of the ordinance would take its property for municipal purposes without due process of law in contravention of the Fourteenth Amendment. In defense the respondents maintain that the establishment of the public hack stand does not amount to a taking of petitioner's property but is a mere traffic regulation that the town is authorized to make under the track elevation agreement and also by the exertion of its police power.

After trial, the district court entered its final decree declaring the ordinance repugnant to the Fourteenth Amendment and restraining the town from taking the company's land for a public hack stand and preventing it from interfering with the company's use of its premises or control of vehicles thereon and commanding the individual defendants to refrain from parking vehicles or soliciting patronage on the station grounds. The Circuit Court of Appeals reversed the decree and directed the district court to dismiss the case. 14 F. (2d) 257. This Court granted a writ of certiorari. 273 U. S. 686.

The Circuit Court of Appeals held that the track elevation agreement authorized the town to establish a public hack stand on the driveway in the station grounds. The principal purposes of that agreement was to eliminate grade crossings; regulation of traffic to and from the station was incidental. The town has not acquired by purchase or eminent domain any part of petitioner's land or the right to establish a public hack stand there. It is not claimed that the agreement expressly authorizes the town to make such an appropriation of petitioner's land. And there is nothing from which such a grant may be implied. The intention of the parties is plainly expressed. There is an express dedication by the companies of their lands within the new street opened by the town outside the station grounds. But, there being no such purpose in respect of land within the grounds, the agreement declares

" this contract shall not be construed as a dedication of said driveway as a public highway." There is no room for construction. And, even in the absence of that clause, the facts disclosed by the record are not sufficient to raise a presumption of dedication. *Wood* v. *Hurd,* 34 N. J. L. 87.

While petitioner owed its passengers the duty of providing a suitable way for them to reach and leave its station, it was not bound to allow cabmen or others to enter upon or use any part of its buildings or grounds to wait for fares or to solicit patronage. *Donovan* v. *Pennsylvania Company,* 199 U. S. 279, 295. *Thompson's Express Co.* v. *Mount,* 91 N. J. Eq. 497. Its agreement to keep the driveway " open for traffice to and from the station " did not add to its obligations or enlarge the powers of the town. Respondents put much reliance upon the clause providing that the town " may and shall exercise all necessary police powers " in and upon the station grounds " for the purpose of regulating traffic " at the station and for the enforcement of petitioner's rules and regulations in respect thereto. But it is to be borne in mind that the taking of private property for public use is deemed to be against the common right and authority so to do must be clearly expressed. *Western Union Tel. Co.* v. *Penn. R. R.,* 195 U. S. 540, 569. Lewis on Eminent Domain (3rd ed.), § 371. *Inhabitants of Springfield* v. *Connecticut River Railroad Co.,* 4 Cush. 63, 69–72. *Holyoke Company* v. *Lyman,* 15 Wall. 500, 507. Cf. *Richmond* v. *Southern Bell Telephone Co.,* 174 U. S. 761, 777. The provision relied on is merely petitioner's authorization and the town's agreement that the municipal power of police shall be exerted for the purpose of regulating, and to carry into effect petitioner's rules in respect of, the traffic at the station. The agreement does not empower the town so to appropriate petitioner's land.

Is the provision of the ordinance of October 22, 1924, declaring a part of the driveway to be a public hack stand a valid exercise of the police power? We assume that by the laws of the State the town is authorized to regulate traffic and to establish public hack stands in its streets and other public places. It does not claim the power to take or appropriate private property for such a purpose without giving the owner just compensation, but it contends that the establishing of this hack stand " was justified under the police power by the public necessities for the safety, welfare and comfort of the public using the driveway " and that it does not take private property for public use without compensation "because the lands taken are devoted to a public use." But, assuming that under the circumstances the creation of the public hack stand would be a proper exertion of the police power, it does not follow that the due process clause of the Fourteenth Amendment would not safeguard to the owner just compensation for the use of its property. *Penna. Coal Co.* v. *Mahon,* 260 U. S. 393, 416. The police power may be and frequently it is exerted to effect a purpose or consummate an enterprise in the public interest that requires the taking of private property; but, whatever the purpose or the means employed to accomplish it, the owner is entitled to compensation for what is taken from him. The railroad grounds, station, platforms, driveways, etc., are used by the petitioner for the purposes of its business as a common carrier; and, while that business is subject to regulation in the public interest, the property used belongs to petitioner. The State may not require it to be used in that business, or take it for another public use, without just compensation, for that would contravene the due process clause of the Fourteenth Amendment. *Reagan* v. *Farmers Loan & Trust Co.,* 154 U. S. 362, 396, *et seq. Smyth* v. *Ames,* 169 U. S. 466, 523, 526. *Western Union Tel. Co.* v. *Penna. R. R., supra,* 571. *Producers*

318°—28——13

*Transportation Co.* v. *Railroad Commission,* 251 U. S. 228.
*Michigan Commission* v. *Duke,* 266 U. S. 570, 577–578.

As against those not using it for the purpose of transportation, petitioner's railroad is private property in every legal sense. The driveway in question is owned and held by petitioner in the same right and stands on the same footing as its other facilities. Its primary purpose is to provide means of ingress and egress for patrons and others having business with the petitioner. But, if any part of the land in the driveway is capable of other use that does not interfere with the discharge of its obligations as a carrier, petitioner as an incident of its ownership and in order to make profit for itself has a right to use or permit others to use such land for any lawful purpose. *Donovan* v. *Pennsylvania Company, supra,* 294.

There was no duty upon petitioner to accord to other taxicabmen the use of its lands simply because it had granted Welsh the privileges specified in its contract with him. Petitioner is not bound to permit persons having no business with it to enter its trains, stations or grounds to solicit trade or patronage for themselves; they have no right to use its property to carry on their own business. Petitioner had no contract relations with taxicabmen other than Welsh and owed them no duty because they did not have any business with it. The enforcement of the ordinance here assailed would operate to deprive petitioner of the use of the land in question and hand it over to be used as a public hack stand by the individual defendants and others. As to them, and so far as concerns its use as a public hack stand, the driveway was petitioner's private property and could not be so appropriated in whole or in part except upon the payment of compensation.

Under the guise of regulation, the town cannot require any part of the driveway to be used in a service that peti-

tioner is under no duty to furnish.   And, as petitioner's
duty here involved is confined to the business of carrying
passengers by railroad, the declaration of the ordinance
that the specified part of the driveway " is hereby desig-
nated and established as an additional public hack stand "
clearly transcends the power of regulation.   To compel
the use of petitioner's land for that purpose is to take it
without compensation in contravention of the constitu-
tional safeguard here invoked.   *Great Northern Ry. Co.*
v. *Minnesota,* 238 U. S. 340, 346.   *Great Northern Ry.*
*Co.* v. *Cahill,* 253 U. S. 71.

> *The decree of the Circuit Court of Appeals is*
> *reversed, and the decree of the district court is*
> *affirmed.*

MR. JUSTICE BRANDEIS, concurring in part.

I agree that the decree of the Circuit Court of Appeals,
directing a dismissal of the Railroad's bill, should be re-
versed.   But I think that the decree of the District Court
requires serious modification.   That decree ordered among
other things, " that the Town of Morristown, do desist and
refrain, and is hereby forever restrained and enjoined
by the attempted enforcement of said ordinance or other-
'wise, from in any manner interfering with or hindering or
obstructing the complainant, the Delaware, Lackawanna
& Western Railroad Company, in the occupation, use or
control of its said station grounds, or in regulating the
place, manner or time in which public or private vehicles
going to and from said station grounds shall enter, stand
or wait thereon or depart from the same."   This part of
the decree is, in my opinion, inconsistent with the terms of
the contract between the Railroad and the town, with the
decision of the highest court of the State construing the
same, *Welsh* v. *Morristown,* 98 N. J. L. 630, affirmed *sub*

*nom. Welsh* v. *Potts,* 99 N. J. L. 528, and with the general law of New Jersey. It seems to me inconsistent, also, with the law concerning the obligations of railroads as heretofore declared by this Court.

The situation which confronted the town authorities was this: About 3,000 passengers are handled in and out of the station each day. Continuously, for nearly ten years after the elimination of the grade crossings, cabs had, under the direction of the town authorities and with the acquiescence of the Railroad, parked at the place later assigned by the ordinance here in question. Then, in 1922, arose the controversy which gave rise to the *Welsh* case and to the case at bar. The bulk of the traffic passing through the station is composed of persons commuting to Newark and New York. Accordingly, the demand for taxicabs at the station is largely concentrated in the late afternoon hours. There are forty-two licensed cabs in Morristown. About twenty-five of them were accustomed to park at the station, at various times of the day. Presumably most of them were available for service at the rush hour in the late afternoon. Welsh, for whom the Railroad asserts the exclusive privilege of using the driveway as a hack stand, has only three licensed cabs. Obviously, these are insufficient to give an adequate service. It is true that Welsh made application for additional licenses, and that these have been denied by the town authorities. But the testimony shows that the authorities were of the opinion that there were already more taxicabs in the town than could be operated profitably. No new license had been granted to any one since a date preceding Welsh's application; and no cabman had a license to operate more than three cabs.

The Railroad presented this alternative to the town: "Either grant to Welsh licenses sufficient in number to enable him to supply the needs of all passengers arriving at the station, or submit to a denial to such passengers of

the facilities customary on leaving the station." To escape from that dilemma the town first resorted to the means upheld by the New Jersey courts in the *Welsh* case. It prohibited all parking on the driveway, and located a public taxi-stand on a public street adjacent thereto. While this provided a service adequate so far as the number of vehicles was concerned, it proved unsatisfactory in other respects. The taxi-stand was several hundred feet distant from the shelter house; was not easily visible therefrom; and was difficult of access in inclement weather. The town then passed the ordinance which gave rise to the present suit. It undertook to establish near the station door a public taxi-stand on the Railroad's land. That it clearly had no right to do; for the contract between it and the Railroad had not made the driveway a public street. Obviously a railroad's property cannot be taken without compensation for a purpose unconnected with its rail transportation. *Great Northern Ry. Co.* v. *Minnesota,* 238 U. S. 340, 346; *Great Northern Ry. Co.* v. *Cahill,* 253 U. S. 71. A public taxi-stand is such an unconnected purpose. It would be open to use by cabs which do not serve the patrons of the Railroad, as well as those which do. In establishing this public taxi-stand, the town exceeded its powers. Enforcement of this ordinance was properly enjoined. And since the individual defendants must base their claims on the ordinance, the injunction against them also was proper. Compare *Donovan* v. *Pennsylvania Co.,* 199 U. S. 279; *Thompson's Express & Storage Co.* v. *Mount,* 91 N. J. Eq. 497.

But the injunction granted by the District Court was so broad as to prevent the town from making, by future ordinance, provisions which it may deem necessary to assure to its inhabitants adequate cab facilities. While the contract between the town and the Railroad did not make the driveway a public highway, it did not restrict

rights which the town would otherwise have had under the New Jersey Law and under decisions of this Court. Under the New Jersey law the Railroad was bound to keep the driveway open to all persons seeking access to and from the station on legitimate business. It could not obstruct the driveway by physical enclosure. *Public Service Ry. Co.* v. *Weehawken,* 94 N. J. Eq. 88, 92. It could not, by its private contract with Welsh, interfere with the power of the municipality to make appropriate regulations as to traffic there. *Welsh* v. *Morristown, supra.* For as the New Jersey court said, " the driveway in question was and is devoted to public use, although the fee thereof remained in the railroad company." Like all property of a carrier by railroad, the driveway was subject to the power of the State to compel the provision of adequate facilities incident to the rail transportation.

In these days, the ability of the traveller to obtain conveniently, upon reaching the street door of the station, a taxicab to convey him and his hand-baggage to his ultimate destination, is an essential of adequate rail transportation. The duties of a rail carrier are not necessarily limited to transporting freight and passengers to and from its stations. It must, in connection with its stations, provide adequately for ingress and for egress. And if it does not itself provide the facilities essential for the convenient removal of freight and passengers from the station, it may be required to let others provide them. That a railroad's obligations may be extended beyond its rails, is settled by numerous decisions of this Court. *Atlantic Coast Line R. R. Co.* v. *Corporation Commission,* 206 U. S. 1, 21–22; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Iowa,* 233 U. S. 334; *Michigan Central R. R. Co.* v. *Railroad Commission,* 236 U. S. 615; *Chicago & Northwestern Ry. Co.* v. *Ochs,* 249 U. S. 416; *Lake Erie & Western R. R. Co.* v. *Public Utilities Commission,* 249

U. S. 422.   A State may require a railroad to construct stations.   *Minneapolis & St. Louis R. R. Co.* v. *Minnesota,* 193 U. S. 53.   It may compel the building of a crossing for the convenience of shippers in removing freight. *Norfolk & Western Ry. Co.* v. *Public Service Commission,* 265 U. S. 70, 74.   Its power to require adequate provision for carrying passengers to their ultimate destination rests on the same basis.   Compare *Pennsylvania R. R. Co.* v. *Knight,* 192 U. S. 21, 26.

The Lackawanna Railroad recognized the importance of proper cab service.   It undertook to provide it by the contract with Welsh.   But Welsh was in no position to furnish adequate service.   He had only three licensed cabs.   The Railroad answers that Welsh agreed by his contract with it to supply as many cabs as were needed and that, but for the refusal of the town to grant him more licenses, he would have supplied the requisite number. The town was not obliged to issue additional licenses to Welsh.   Its refusal to do so was not arbitrary or unreasonable.   The ground of its refusal was that the granting of additional licenses would ruin the business of the established cabmen who had long been engaged in serving its inhabitants, and thus would impair the cab service of the general public throughout the town.   The principle on which the town acted is one that is general in motor vehicle regulation today.[1]   It is one that has been ap-

---

[1] In at least nine states the commission charged with the duty of licensing bus operators is specifically directed to consider the transportation service already furnished and the effect which the proposed service would have upon it, Colorado, Compiled Laws, 1921, § 2946; Kansas, Laws, 1925, c. 206, § 4; Kentucky, Acts, 1926, c. 112, § 4; Montana, Laws, 1923, c. 154, § 4; North Dakota, Laws, 1925, c. 91, §§ 4, 5, 8; Ohio, Page's Code, 1926, § 614–87; South Dakota, Laws, 1925, c. 224, § 3; West Virginia, Barnes' Code, 1925, c. 43, § 82; Wyoming, Compiled Statutes, 1920, § 5497.   The principle of safeguarding established, adequate facilities, is applied by commissions in

proved by this Court. *Texas & Pacific Ry. Co.* v. *Gulf, Colorado & Santa Fe Ry. Co.*, 270 U. S. 266, 277; *Interstate Busses Corp.* v. *Holyoke Street Ry. Co.*, 273 U. S. 45, 52. Compare *Packard* v. *Banton*, 264 U. S. 140, 145; *Frost & Frost Trucking Co.* v. *Railroad Commission*, 271 U. S. 583, 599–600.

The record shows that the service which Welsh can furnish is inadequate, that to grant him sufficient licenses to enable him to furnish such service would impair taxi service throughout the town, and that a taxi-stand located elsewhere than on the driveway does not satisfy the needs of travellers leaving the station. If, under these circumstances, the town should pass an ordinance establishing,

passing upon applications for certificates of convenience and necessity, and by courts in reviewing their orders, although there is not a specific direction in the statute. In the following cases the orders of commissions granting certificates of convenience and necessity were set aside on the ground that it did not sufficiently appear that existing facilities were inadequate: *West Suburban Transportation Co.* v. *Chicago & West Towns Ry. Co.*, 309 Ill. 87; *Choate* v. *Commerce Commission*, 309 Ill. 248; *Superior Motor Bus Co.* v. *Community Motor Bus Co.*, 320 Ill. 175; *Cooper* v. *McWilliams & Robinson*, 298 S. W. 961 (Ky.); *Cincinnati Traction Co.* v. *Public Utilities Commission*, 112 Ohio St. 699; *East End Traction Co.* v. *Public Utilities Commission*, 115 Ohio St. 119; *Columbus Ry., Power & Light Co.* v. *Public Utilities Commission*, 116 Ohio St. 36; *Chicago, Rock Island & Pacific Ry. Co.* v. *State*, 123 Okla. 190. In *Red Star Transportation Co.* v. *Red Dot Coach Lines*, 220 Ky. 424; *McClain* v. *Public Utilities Commission*, 110 Ohio St. 1; and *Abbott* v. *Public Utilities Commission*, 136 Atl. 490 (R. I.), orders denying certificates were sustained, on the ground that the proposed operation would have impaired adequate transportation facilities already established. The same principles apply with regard to municipal regulation of jitney busses. *Cloe* v. *State*, 209 Ala. 544, 545–546; *Birmingham Interurban Taxicab Service Corp.* v. *McLendon*, 210 Ala. 525; *State* v. *City of Spokane*, 109 Wash. 360. That a railroad has no preferred claim to the grant of a certificate, see *Northern Pacific Ry. Co.* v. *Department of Public Works*, 256 Pac. 333 (Wash.). Compare *Baltimore & Ohio R. R. Co.* v. *State Road Commission*, 139 S. E. 744 (W. Va.).

on the driveway, a taxi-stand available only to incoming passengers, I see no reason why, under the contract between it and the Railroad or under the general laws of New Jersey, it may not do so. Certainly *Donovan* v. *Pennsylvania Co.*, 199 U. S. 279, presents no obstacle. For in that case, the Court expressly left open the question whether the State, to secure adequate service, might require what the cabmen there asserted of their own right. P. 298. Compare *Norfolk & Western Ry. Co.* v. *Public Service Commission, supra.*

Moreover, the decree is subject to another infirmity. By its broad language, it restrains the town from making and enforcing reasonable traffic regulations applicable to the driveway. In so doing it conflicts with both the terms of the contract and the decision of the New Jersey courts in the *Welsh* case. The contract between the Railroad and the town expressly declares that the driveway " shall be kept open at all times for passengers, pedestrians, carriages, wagons, automobiles and general vehicular traffic to and from the station grounds "; and that "the Town may and shall exercise all necessary police powers in and upon the station, station grounds, approaches and driveways, for the purpose of regulating foot and vehicular traffic." It was decided in *Welsh* v. *Morristown,* 98 N. J. L. 630, affirmed sub nom. *Welsh* v. *Potts,* 99 N. J. L. 528, that under this contract the town had power to prohibit all parking on the driveway. That construction, being a ruling on a matter of law, is binding upon us. *St. Anthony Falls Water Power Co.* v. *St. Paul Water Commissioners,* 168 U. S. 349, 358; *Guffey* v. *Smith,* 237 U. S. 101, 112–113. Compare *Detroit* v. *Osborne,* 135 U. S. 492, 497–500; *Hartford Insurance Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 175 U. S. 91, 100.

MR. JUSTICE HOLMES concurs in this opinion.