ATLANTA TERMINAL COMPANY *v.* GEORGIA PUBLIC
SERVICE COMMISSION *et al.*

No. 6696.   July 12, 1929.

*Howell, Heyman & Bolding,* for plaintiff.

*Hewlett & Dennis* and *S. J. Smith Jr.,* for defendants.

Russell, C. J.   This case has previously appeared in this court, and is reported in *Atlanta Terminal Co. v. Georgia Public Service Commission,* 163 *Ga.* 897 (137 S. E. 556).   After notice and a hearing upon complaint filed by the Yellow Cab Company, the Georgia Public Service Commission passed the order which is quoted in full in the statement of facts in the case just cited. The other material features are sufficiently set forth in the report of that case, in which it was stated that "evidence without substantial conflict, tending to sustain the allegations of fact contained in the petition, was introduced" at the previous hearing

when an interlocutory injunction restraining the enforcement of the order was refused; and the judgment of the trial court was affirmed by this court. The present writ of error is based upon the final judgment of the superior court, but there has been no change whatever in the pleadings or the issues presented thereby; and while some additional evidence was introduced in the hearing which was had by stipulation of counsel before the judge without the intervention of a jury, it can not be said, nor is it insisted by the plaintiff, that the conclusion reached by the trial court is unsupported by evidence. Learned counsel for the plaintiff state that in their opinion the "questions involved are . . questions of law, and the issues raised by plaintiff in error challenge the authority of the commission under the law to compel plaintiff in error either to recognize the claim checks of any transfer company who will give the bond provided for, or to turn over to such transfer company the claim checks of plaintiff in error to be used in train-checking parcels before they are actually received by the plaintiff in error." Counsel practically concede that the decision of the present case is properly controlled by the previous adjudication when the case was before us for review upon the order of the trial court refusing a temporary injunction. However, counsel present for our consideration the rulings of the Supreme Court of the United States in two cases, and submit that under these rulings, which are of superior authority to the decisions of this court, our previous adjudication is not binding. The cases to which we are cited are Delaware &c. R. Co. v. Morristown, 276 U. S. 182 (48 Sup. Ct. 276), and Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U. S. 518 (48 Sup. Ct. 404), both of which were decided subsequently to the decision in 163 Ga., supra. In our opinion neither of these cases is in point upon the issues raised in the case at bar.

The three headnotes in the prior adjudication which are adverse to the contention of the plaintiff are the sixth, seventh, and eighth. In the syllabi referred to this court held that under the terms of art. 4, sec. 2, par. 1, of the constitution of this State (Civil Code, § 6463), and independently of this provision, the General Assembly possesses the inherent power to regulate public utilities by making laws and ordinances consistent with the constitution of the State and not repugnant to the constitution of the

United States; that the order of the public-service commission which is attacked does not violate the due-process clause of the State and Federal constitutions, and that the order is not void upon the ground that it unduly interferes with the plaintiff's management of its own property or invades its right of contract and the selection of its own agents for the discharge of its public duties. In Black & White Taxicab Co. *v.* Brown & Yellow Taxicab Co., supra, cited by counsel for the plaintiff, it is true that a majority of the court upheld the validity of a contract made with the L. & N. Railroad by the Black & White Company, of a similar nature as that in this case between the Atlanta Terminal Company and the Atlanta Baggage & Cab Company. However, the opinion of the Supreme Court of the United States, delivered by Mr. Justice Butler, was not unanimous. Justices Holmes, Brandeis, and Stone strongly dissented quoties toties from the judgment of affirmance which upheld the judgment of the Circuit Court of Appeals for the Sixth Circuit. Conceding, however, that the judgment of the majority (if it decided the point now before us) should be controlling, it is our opinion that nothing ruled in the prior decision of this court conflicts with the ruling in the Black & White Taxicab Co. case, or in anywise impinges upon the principles announced therein. The Supreme Court of the United States was dealing with an entirely different question from the one before us. In the first place, in the case at bar there is no attack whatever upon the validity of the contract between the Atlanta Terminal Company and the Atlanta Baggage & Cab Company, granting the latter company, for a consideration, certain special privileges of great benefit to the cab company. The order of the commission does not seek to interfere with those privileges which permit the Atlanta Baggage & Cab Company to use, to the exclusion of all others, grounds at the entrance of the depot of the Atlanta Terminal Company and to have offices and storerooms in the depot convenient to the tracks of the several railroad carriers which use the depot. The order of the public-service commission does not attempt to interfere with the property rights of the terminal company in any portion of its property. Consequently it does not seem to us that the order of the commission can be properly construed as anything more than a rule or regulation properly within the scope of its powers and duty to enforce the duty of the termi-

nal company to receive for transportation, under the conditions specified in the order, baggage tendered by others than the Atlanta Baggage & Cab Company, the performance of which duty the commission found to be necessary for the convenience of the traveling public.

In a village railroad station the offices of the carrier are in easy access to any proposed passenger; and whether his baggage is brought to the railroad depot in an old one-horse wagon or by an automobile truck, there is no difficulty in the passenger receiving the train check at once from the agent of the carrier; there is generally no crowd of passengers dealing with the agents of the carrier. There is ample room within a few feet of the depot for the vehicle used for transportation to stop and stand, and the occupancy of the space does not usually in any way discommode other travelers, the few other travelers likely to come for the purpose of boarding the train. It can easily be assumed that in the congested marts of commerce and cities of great population, where the railroad-tracks are on a different level from the means of approach available to passengers with baggage, and the railroad-station and its accessories cover acres of ground, and the preservation of public safety requires that every avenue of entrance and exit be zealously policed, an entirely different condition is presented to a traveler seeking to carry his baggage to an overcrowded railroad-station in a large city from that which obtains at small rural railroad-stations. Nevertheless the duty of the carrier to perform his duty of receiving the baggage of passengers for transportation is the same in the one case as in the other. It appears from the evidence in the record of this case, from actual experiences of witnesses who testified, and whose testimony is entirely uncontradicted, that unless a passenger with baggage, who is compelled to use the depot of the Atlanta Terminal Company, is able to secure and does secure the services of the Atlanta Baggage & Cab Company for the transportation of his baggage, he will be put to great inconvenience and discomfort, and in some instances will fail to be able to make the train upon which he intends to take his journey without the loss of valuable time and much useless trouble and annoyance. It is easy to see from the evidence in this case, that, without the passage of a regulation such as that embodied in the order of the Georgia Public Service Commission, the Atlanta Bag-

gage and Cab Company would acquire an absolute monopoly of the transportation of all baggage to be transported over all of the numerous railway carriers using the depot of the Atlanta Terminal Company, with resulting injurious effects referred to in headnotes 4 and 5 of our prior decision in this case. We are therefore of the opinion that it is within the power of the commission to pass any fair and impartial regulation which will tend to prevent and make impossible such a condition as that disclosed by this record, and that such a rule does not in anywise deprive the Atlanta Terminal Company of any of its property rights as dealt with in the case of Black & White Taxicab Company, supra.

In the prior decision in this case this court held that in the passage of the order by the public-service commission the due-process clause of neither the State nor the Federal constitution was violated; and in the majority opinion delivered by Mr. Justice Butler in the Black & White Co. case, in discussing the ruling that the contract involved did not exceed the railroad company's powers under its Kentucky charter, attention is called to the fact that in the decision of the Kentucky Court of Appeals in McConnell v. Pedigo, 92 Ky. 465 (18 S. W. 15), relied upon by the petitioner in certiorari, "The opinion does not hold or suggest that the contract was contrary to any provision of the constitution or statutes of Kentucky," from which it may be implied that the ruling might have been different had there been a holding upon the constitutional question by the Kentucky court. This seems to be a tacit agreement with the statement of Mr. Justice Holmes, that "If a State constitution should declare that on all matters of general law the decisions of the highest court should establish the law until modified by statute or by a later decision of the same court, I do not perceive how it would be possible for a court of the United States to refuse to follow what the State court decided in that domain. But when the constitution of a State establishes a Supreme Court, it by implication does make that declaration as clearly as if it had said it in express words, so far as it is not interfered with by the superior power of the United States." We quote the headnotes from the majority opinion, from which we think it clearly appears that in ruling that the order of the public-service commission does not deprive the Atlanta Terminal Company of any of its rights of property in its depot grounds or any

accessories such as dealt with in the Black & White Co. case, but is a mere rule regulatory of the duty of the Atlanta Terminal Company to receive baggage as the owner of the depot, we do not conflict with any ruling made in that case:

"A Kentucky railroad corporation made a contract with the plaintiff, a Tennessee corporation carrying on a transfer business at a city in Kentucky, whereby it granted to plaintiff the exclusive privilege of going upon its trains, into its depot and on its surrounding premises, to solicit transportation of baggage and passengers, and assigned a plot of ground belonging to it for the use of plaintiff's taxicabs while awaiting the arrival of trains, the plaintiff on its part agreeing to render certain services and to make monthly payments. The term of the contract was for one year, to continue for consecutive yearly periods until terminated by either party on thirty days notice. Plaintiff was the successor of a Kentucky corporation of the same name, which had had a like contract with the railroad company, and which was dissolved after its shareholders had incorporated the plaintiff and caused the property and business to be transferred to it. The purpose of the change of corporations and contracts, co-operated in by the railway company, was to create a diversity of citizenship. In a suit brought by the plaintiff in the Federal court in Kentucky, on the basis of diverse citizenship, to restrain another transfer corporation, created in Kentucky, from soliciting business and parking vehicles on the railroad premises in violation of plaintiff's exclusive contract, and to restrain the railroad company from permitting such violations, *Held:*

"1. That the suit was not subject to dismissal under Jud. Code, § 37, since the controversy was real and substantial, the plaintiff was the real party in interest, and the requisite diversity of citizenship existed. The co-operation between the plaintiff and the railroad company to have the rights of the parties determined by a Federal court was not improper or collusive within the meaning of § 37.

"2. The contract did not exceed the railroad company's powers under its Kentucky charter.

"3. The contract is consistent with the provision of the Kentucky constitution, § 214, forbidding any railroad company to make exclusive or preferential arrangement for the conduct of any business as a common carrier.

"4. In the absence of any governing provision of local statutes or constitution, the question whether such a contract is against public policy is one of general law.

"5. Under the common law, as construed and applied by this court, by State courts generally, and by English courts, such contracts are valid. . .

"6. Where the validity of a contract (in this case made in a State which has adopted the common law) involves no question of land title, or of local statute or constitution, or of fixed local usage, but depends upon a question of general law, Federal courts, while inclining to follow courts of the State in which the controversy arises, are not bound by Rev. Stats. § 721, to do so, but are free to exercise their own independent judgment."

In the Delaware R. Co. case, supra, the Supreme Court of the United States ruled as follows: "The railroad company constructed a driveway over its station grounds to connect with the streets of the town. The railroad and the town agreed that the driveway should be kept open, and that the town should exercise upon the station grounds, etc., all necessary police powers for the regulation of traffic and for the enforcement of the railroad's rules and regulations. The railroad granted a cabman exclusive right to solicit passengers and baggage in the station grounds, and to park his vehicles in the driveway. The town (claiming the right so to do under the contract) declared the space so assigned by the railroad a public hackstand, and prohibited parking elsewhere. Other cabmen thereupon entered the grounds and used that space. The railroad objected on the ground that its property was being taken for municipal purposes without compensation. *Held:*

"1. The taking of private property for public use is against the common right, and authority so to do must be clearly expressed. The agreement does not empower the town to establish a public hackstand on the company's land.

"2. Assuming that the creation of a public hackstand upon the station grounds would be a proper exertion of the police power, the due-process clause safeguards to the owner of the land just compensation for the use of its property.

"3. As against those not using it for purposes of transportation, the railroad is private property in every legal sense, and if any part of its land is capable of use that does not interfere with

discharge of its obligations as a carrier, the railroad has the right to use or permit others to use it for any lawful purpose.

"4. A railroad is not bound to permit persons having no business with it to enter its trains, station, or grounds, to solicit trade or patronage for themselves, and the grant of such privilege to one does not give rise to any duty to others.

"5. To compel the use of railroad-station grounds for public hackstands without compensation is to take them in violation of the due-process clause of the fourteenth amendment."

A consideration of the facts in the case at bar convinces us that none of the rulings laid down in the Delaware R. Co. case are applicable to the question raised in the present record. In concluding, it may be said that under the construction given to the order of the public-service commission by this court in the prior adjudication, such order does not compel the plaintiff "to turn over to such transfer company [who will give the bond provided for] the claim-checks of plaintiff in error to be used in train-checking parcels before they are actually received by the plaintiff in error," as complained.

*Judgment affirmed. All the Justices concur..*