ILLINOIS CENT. R. CO. v. CITY OF NEW ORLEANS et al. .

Civ. A. No. 2676.

United States District Court
E. D. Louisiana

New Orleans Division.
March 30, 1950.

them from soliciting and picking up passengers on the premises leased by the railroad from the City of New Orleans, the premises being the present site of the terminal station, hereinafter referred to as the Illinois Central station, now operated by the plaintiff railroad in the City of New Orleans.

The Illinois Central Railroad Company after owning and operating a terminal station in the City of New Orleans for many years, pursuant to an agreement (hereinafter referred to as the Terminal Agreement) entered into by the City of New Orleans and all railroads servicing the city with passenger traffic, sold to the city the site of its terminal station, together with all the improvements thereon and pursuant to the same agreement on September 8, 1949, leased the site with the improvements back from the city pending the completion of the new passenger terminal to be built under the Terminal Agreement.

Included in the demise to the City of New Orleans and the lease back to the railroad is a covered concourse, serving as the front of the Illinois Central station, together with a certain plot of land approximately 40 feet in width and 100 feet in length immediately adjacent to this concourse. This plot of land, though formerly owned by the railroad and now leased from the city by the railroad, has always been used by vehicles for discharging and picking up passengers going to and from the terminal. In addition the City of New Orleans has policed this area in order to avoid traffic congestion and has placed the customary traffic signs in appropriate locations for this purpose.

For years and continuing to date, the railroad has had in effect a contract between it and the Toye Brothers Yellow Cab Company by which the cabs of that company have the exclusive right to solicit passengers at the Illinois Central station and to maintain an exclusive parking area for its cabs immediately in front of the station in the area above described.

On January 6, 1950, the Commission Council of the City of New Orleans adopted the following ordinance whereby it un-

Lemle, Moreno & Lemle, Selim B. Lemle, Pat F. Bass, New Orleans, La., for plaintiff.

Henry Curtis, New Orleans, La., for City of New Orleans.

Kullman & Lang, New Orleans, La., for Cooperative Cab Co.

H. L. Oulliber, Jr., New Orleans, La., for Nola Cab Co.

Robert Oster, New Orleans, La., for Veterans Cab Co.

WRIGHT, District Judge.

In this action the Illinois Central Railroad Company seeks to enjoin the City of New Orleans from enforcing an ordinance which the railroad alleges is unconstitutional and under which all properly licensed taxicabs may use the area outside of and adjacent to the railroad station for picking up and discharging passengers. The railroad also seeks a preliminary injunction against all taxicab owners and operators, except the taxicabs operated by the Toye Brothers Yellow Cab Company, restraining

dertook to amend paragraph (e) of Section 1 of Ordinance No. 16,605, C.C.S., which governs the operation of taxicabs and other for-hire vehicles, by redefining the term "street" as found in said ordinance. The said redefinition of the term "street" is as follows: "(e) The term "Street" means any public street, avenue, road, boulevard, alley, lane, highway, sidewalk, public park, airport, railroad station or depot, steamship landing, ferry landing, viaduct or other public place under control of the City of New Orleans and established by it for the use of vehicles and not otherwise controlled by law or ordinance. It shall also mean all vehicular roads, driveways or areas outside of and adjacent to or in all railroad stations, steamship, steamboat or ferry landings and bus stations, owned by the City of New Orleans, which are used regularly or may be so used by taxicabs or other for-hire vehicles to pick up and discharge passengers, which places shall hereafter be and remain open to, and used by all such duly licensed vehicles, without charge and without distinction as to the ownership of such vehicles or the licensed operators thereof, and subject to the other provisions of this ordinance."

Since the effective date of this ordinance all properly licensed cabs have solicited passengers in the concourse in front of the Illinois Central station and picked them up in the area immediately adjacent to it. The railroad alleges that under its contract of lease with the City of New Orleans it has "the right to sublease or grant concessions on any portions of the demised premises for any purpose normally incident to its passenger operations thereon". It alleges that the passage of the ordinance of January 6, 1950 is unconstitutional because it impairs the obligation of the city's contract with it, and that the activities of the taxicab companies, other than the Yellow Cab Company, on the concourse and in the area immediately adjacent thereto constitutes a trespass on its property and that the parties in question should be enjoined from continuing the trespass.

The defendants concede that under the contract of lease with the city the Illinois Central Railroad does have the right to sublease or grant concessions on any portions of the demised premises for any purpose normally incident to its passenger operations thereon. They contend, however, that the granting to one taxicab company of the exclusive right to solicit and pick up passengers at the station is not a concession "normally incident to its passenger operations". Defendants contend further that the area immediately adjacent to the covered concourse in front of the station is a public street and that plaintiff has no authority under its lease to control taxicab activities on such street.

Defendants further allege want of equity in plaintiff's application for a preliminary injunction. They state that this want of equity consists in the unlawful monopoly granted the Yellow Cab Company by the railroad and the fact that Yellow Cabs are not available to the Negro patrons of the railroad, Ordinance No. 16,605, C.C.S., Sec. 7(g), and consequently such patrons are without means of egress from the station by taxicab.

The railroad predicates its demand for an injunction on innumerable cases both from the Supreme Court of the United States and the Supreme Court of Louisiana, which hold that a railroad has the right to grant an exclusive contract to one taxicab company to use the area owned by the railroad in front of its station for taxicab purposes. No case, however, is cited by the plaintiffs in which the area in question is public land leased from a city and in which the area is in fact if not in name a public street. Nor is any case cited in which the city has passed an ordinance similar to Ordinance No. 17,733, C.C.S., dated January 6, 1950, passed by the City of New Orleans. As a matter of fact in Delaware L. & W. R. Co. v. Town of Morristown, 276 U.S. 182, at page 200, 48 S.Ct. 276, 281, 72 L.Ed. 523, 56 A.L.R. 756, on which plaintiff so strongly relies, in the concurring opinion of Mr. Justice Brandeis concurred in by Mr. Justice Holmes, Mr. Justice Brandeis makes the following observation: "The record shows that the service which Welsh can furnish is inadequate, that to grant him sufficient licenses to enable him to furnish such service would impair taxi

service throughout the town, and that a taxi stand located elsewhere than on the driveway does not satisfy the needs of travelers leaving the station. If, under these circumstances, the town should pass an ordinance establishing, on the driveway, a taxi stand available only to incoming passengers, I see no reason why, under the contract between it and the railroad or under the general laws of New Jersey, it may not do so. Certainly Donovan v. Pennsylvania Co., 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192, presents no obstacle. For in that case, the court expressly left open the question whether the state, to secure adequate service, might require what the cabmen there asserted of their own right. 199 U.S. page 298, 26 S.Ct. 91. Compare Norfolk & Western Ry. Co. v. Public Service Commission, supra [265 U.S. 70, 44 S.Ct. 439, 68 L.Ed. 904]."

The affidavits in this case as in the Morristown case show that the service offered by the Yellow Cab Company to persons leaving the Illinois Central station is totally inadequate during peak hours. Under the circumstances and with the present ordinance Justices Brandeis and Holmes would allow a public taxi-stand available to incoming passengers on the premises of the railroad. Perhaps the other justices in the Morristown case would likewise allow a public taxi-stand on the premises of the railroad if those premises were public property leased to the railroad for limited terminal purposes. There is no language in the Morristown opinion to indicate they would not.

The other case on which plaintiff relies is Kansas City S. & G. Terminal Co. v. Interurban Motor Transp. Co., 152 La. 1093, 95 So. 258. It is true in that case the Supreme Court of Louisiana made a flat holding that the railroad may grant an exclusive use of its premises for taxicab purposes to one taxicab company. In that case, however, the property in question was not public property leased by the railroad, nor was there a city ordinance which specifically opened such area to all taxicab operators.

■■ Plaintiff's contention that the city ordinance of January 6, 1950, is an unconstitutional impairment of the contract of lease between itself and the city is not well founded. In that contract of lease the city specifically reserved to itself police power over the area covered in the lease and the police power of a city includes the right and obligation of keeping public streets and areas adjacent thereto free and open to lawful competition between taxicabs. It is also a part of the police power of the city to make available to incoming passengers at railroad stations adequate transportation, including taxicabs. Delaware L. & W. R. R. v. Town of Morristown, supra (concurring opinion).

■ The city in leasing the property in question to the railroad did not give the railroad the unrestricted right to do with the property what it chose. This contract of lease was tied to the Terminal Agreement under which the Illinois Central had the right to sublease or grant concessions of any portions of the demised premises provided those concessions were normally incident to its passenger operations. Under this provision the railroad of course could grant a concession of a news-stand, drug store, restaurant, and other similar businesses, but the operation of a monopoly of passenger traffic from the station is not a purpose normally incident to the railroad's passenger operations. Obviously the city did not think so because the ordinance of January 6, 1950 was passed. At the time the lease was made and at the present time the plans for the new passenger terminal showed the area immediately adjacent to the covered concourse to the front of the Illinois Central station as a public street. These plans were known to the city and to the railroad at the time the lease was entered into and as already pointed out this area has always been used as a public street with the exception that prior to the ordinance of January 6, 1950, the railroad exercised the right to grant the exclusive privilege of picking up passengers at the station to one taxicab company.

■ There is also a want of equity in plaintiff's petition. Plaintiff would have this court enjoin all cab companies from competing with the Yellow Cab Company

for the incoming passenger traffic at the Illinois Central station. Both the United States and the State of Louisiana have laws against monopoly. It is contended by the plaintiff that if this exclusive grant to the Yellow Cab Company is a monopoly, then it is a lawful one and cites Louisiana jurisprudence on the subject. A court of equity should be very reluctant to enforce a monopoly by injunction, whether legal or illegal, particularly when such injunction would restrain competition on public streets or in streets used by the public. Moreover, the City of New Orleans itself, the owner of the premises, could not grant this monopoly to the Yellow Cab Company. Constitution of State of Louisiana, Article 19, Section 14; Texas & Pacific Railway Co. v. Southern Pacific Railway Co., 41 La. Ann. 970, 6 So. 888, 17 Am.St.Rep. 445. And a court of equity should not assist the Yellow Cab Company in obtaining indirectly what it cannot obtain directly.

In view of the foregoing, the application for preliminary injunction is denied.