300 P.2d 504

Thomas W. BOISE & M. Nelda Boise, his
wife, Plaintiffs-Respondents,

v.

Loren L. WHITLOCK, Defendant-
Appellant.

No. 8420.

Supreme Court of Idaho.

Aug. 2, 1956.

J. H. Felton and William J. Jones, Lewis-
ton, for appellant.

Earle W. Morgan, Lewiston, for respondents.

BAKER, District Judge.

The parties will be referred to as they appeared in the trial court. On and for several years prior to December 30, 1954, the plaintiffs were the owners of the Raymond Hotel in Lewiston. Plaintiff, Thomas W. Boise, was the local agent of the four bus lines serving Lewiston, sold tickets, maintained baggage space in the hotel and accepted, checked and delivered baggage. All busses loaded and unloaded passengers on the hotel property adjacent to the lobby. Very substantial demands for taxicab service developed at the hotel by reason of the bus traffic. Bus passengers were given the right to the use of hotel rest rooms and to use the lobby as a waiting room.

On February 17, 1947, the mayor and council of the city, upon the approval of the city engineer, issued to the plaintiffs a "permit" for "reserved parking space", sometimes referred to as an "unloading zone" of sixty feet in length on the street adjacent to the hotel entrance. The license or permit was not for definite term and the right of the city at any time to revoke was expressly reserved.

On December 30, 1954, the plaintiffs leased to the defendant for the period of five years, with renewal privilege, at the monthly rental of $150 "the normal use" of the lobby for waiting room purposes and the rest rooms for his patrons and drivers and the right to maintain telephone on the outside wall of the building. The lease also provided that the lessee would apply for taxi stand at the curb adjoining the building and that the lessors would "sign the necessary consent and approval to lessee's application for taxi stand". The implication that license for taxi stand at the curb would not be issued without plaintiffs' consent also appears from the form of application for plaintiffs' reserved parking space. On that form the following appears:

"Approval of Owner

"The undersigned property owner (property owner's agent) hereby approves this application

Signed————"

As originally drafted the lease provided for cancellation only in the event license was not granted to the lessee, was not renewed or was cancelled during the period of the lease. Upon recommendation of counsel for the defendant the lease was redrafted so as to provide for cancellation in the event the Greyhound busses should cease loading and unloading at the hotel.

For several years prior to October 28, 1954, the Yellow Cab line, under oral lease of substantially the same terms as the written lease, had occupied a part of plaintiffs' reserved parking space, had furnished the taxicab service at the hotel and had paid to the plaintiffs a rental of $150 per month. The Yellow Cab was denied permit for stand at the site. The plaintiffs did not sign consent to such permit, evidently required of abutting property owners. Whether the plaintiffs were requested to sign or declined to sign or the reason for their refusal, if they in fact refused, does not appear.

On and prior to October 28, 1954, the defendant owned and operated one of the three taxi lines in Lewiston. On that date he purchased the Yellow line and continued to keep taxis at the hotel stand, evidently without license from the city, and paid the sum of $150 per month to the plaintiffs. Upon the execution of the lease the plaintiffs executed a release of forty feet of their reserved space. Thereupon the city licensed the defendant to maintain a taxi stand at the site.

Defendant paid one month's rental under the lease but declined to make further payments. At the time of the trial he was operating the taxi stand and, to meet the demands of the business developing at said place, made an effort to keep two cabs constantly at the stand. Defendant, by purchase, had eliminated all competition. He made no effort to maintain constant service at any other station.

On April 7, 1955, plaintiffs sued to recover the rentals then due and subsequently amended their complaint so as to seek judgment for the rentals accruing to the date of the amendment. The answer of the defendant was affirmative.

The execution of the contract by the defendant is admitted. The chief defense urged by him is that the inducement or consideration for his execution of the contract was the accomplishment of two purposes both of which are said to be illegal; namely, (1) that the contract contemplated and involved the exercise by the plaintiffs of influence upon the officers of the city to induce them to issue license to the defendant for the maintenance of taxi stand at the Raymond Hotel, and (2) the usurpation and exercise by the plaintiffs of a control over the streets of the city. Defendant also asserted that the contract was without consideration in that he was granted and he and his patrons and drivers made no other use of the lobby and rest rooms than permitted to the general public. A defense pleaded but not noticed in this court was that the defendant by purchase had acquired ownership of all taxi lines in Lewiston, had eliminated all competition, and that the rentals promised were unconscionable and unreasonable. The defendant does not seek to undo and makes no offer to restore.

The case was tried before the court upon waiver of trial by jury. From all the evidence the trial court expressly found that the plaintiffs did not lease or attempt to lease the taxi stand but leased the hotel facilities only and "—that the right to use the facilities of the plaintiffs was something of substantial value to the defendant in view of the number of busses that stop and start in this location—that the extent of the value is (was) a matter for the determination of the parties and they determined it in the terms of the rental as found in the lease."

The defendant has appealed. While defendant's one assignment of error is general and wholly insufficient, illegality of the contract and absence of consideration are argued.

There was no evidence on behalf of the defendant that the plaintiffs had influenced or attempted to influence the officers of the city in issuing license to the defendant. There was testimony by the defendant, generally in the nature of a conclusion, that all he received under the contract was the right to the stand, but there was much competent and substantial testi-

mony that the thing of value and of great value was the right and opportunity to meet the demands for taxi service developing at the hotel. The only controverted question of fact submitted to the trial court was the consideration received by or the rights granted to the defendant by the contract. That question was for the trial court and the finding was adverse to the defendant's contentions. The finding that the right to use the facilities of the hotel was something of substantial value to the defendant is supported by the clear weight and the volume of the evidence. In such case the finding is conclusive and binding on this court. One of the most recent of the many declarations of this court to that effect is by Chief Justice Taylor in Parke v. Parke, 76 Idaho 168, 279 P.2d 631.

Undoubtedly the trial court, in determining inducement or consideration, considered, among other facts and circumstances appearing in evidence, the testimony of the former owner of the Yellow Cab that the stand was valuable because it was the depot of the Greyhound bus, and of the defendant to the same effect, the change in the contract, requested by the defendant authorizing cancellation in the event the Greyhound busses ceased to load and unload at the hotel, that substantial taxicab business developed at the hotel, that the stand was the most valuable in the city, that to supply the demand for taxi service the operator endeavored to maintain the constant service of two cabs, that like service was not furnished or attempted at any other stand in the city. That the defendant lost interest in paying the rental when he no longer feared competition does not lessen the value of the business at the hotel as a consideration for the contract. Valuable business developed at the hotel. The plaintiffs had the right to profit from the business arising on their property. They had the legal right to grant an exclusive right to another to solicit that business at the hotel and to exclude those to whom the right was not given, Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426; Delaware L. & W. R. R. Co. v. Town of Morristown, 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523, 56 A.L.R. 756. The contract did not purport to give to the defendant the exclusive right to solicit business but it conferred upon him the right to what he would not otherwise have had the right to do; it gave to him the right, among others, to enter upon plaintiffs' property there to solicit and to profit from the taxicab business developing at that point. Of course it was necessary for the defendant to have the right to use the street. If the consent of the plaintiffs, as abutting property owners, was a condition to the issuance of license, they had the legal right to give or to withhold that consent.

The judgment of the trial court is fully sustained by the proof submitted and the facts found. The judgment is affirmed with costs to plaintiffs (respondents).

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.