**HILTON WASHINGTON CORPORATION T/A The Washington Hilton, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants,**

**Public Service Commission of the District of Columbia, Intervenor-Defendant.**

**Civ. A. No. 83–1721.**

United States District Court, District of Columbia.

Sept. 26, 1984.

Allen Jones, Jr., Louis P. Robbins, C. Francis Murphy, Wilkes, Artis, Hedrick & Lane, Washington, D.C., for plaintiff.

Metcalfe C. King, Asst. Corp. Counsel, Washington, D.C., for defendants.

Lloyd N. Moore, Jr., Gen. Counsel, Public Service Com'n of the District of Columbia, Washington, D.C., for intervenor-defendant.

## MEMORNADUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendants' and intervenor-defendant's motion to dismiss; plaintiff's motion for summary judgment; intervenor-defendant's opposition thereto; plaintiff's reply to intervenor-defendant's opposition; supplemental briefing and additional information requested by the Court; oral argument on the motions, and the entire record herein. For the reasons outlined below, summary judgment is granted for defendant and intervenor-defendant.[1]

### I.

The material facts in this case are not in dispute. Plaintiff Hilton Washington Corporation brought suit against the District of Columbia, challenging the constitutionality of section 3 of D.C. Law 4–89, Taxicab Act of 1981, and seeking declaratory judgment voiding the effect of said provision.

The provision at issue provides:

It shall be unlawful for any keeper or proprietor or agent acting for the keeper or proprietor of any licensed hotel in the District of Columbia to exclude any District licensed taxicab driver from picking up passengers at any hackstand or other location where taxicabs are regularly allowed to pick up passengers on the hotel premises.

Violation of this provision shall be punishable by a fine not to exceed $300, or imprisonment for not more than 90 days, or both for each violation thereof.

40 D.C.Code § 725 (1984 Supplement).

Plaintiff is the owner and operator of The Washington Hilton ("the Hotel"). Pri-

---

1. Because the Court requested from all parties further information to help it determine the issues of this case, defendants' and intervenor-defendant's motion to dismiss has been construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

or to the enactment of the above statute, the Hotel operated a taxi stand on its property and regulated and controlled the taxicabs that were permitted to use the said stand.

In 1981, the Council of the District of Columbia enacted the Taxicab Act of 1981 ("the Act"), which became effective on March 31, 1982. Since the effective date of the Act, plaintiff, pursuant to the terms of the statute, has permitted all taxicabs, licensed by the District of Columbia, to enter its property and use the Hotel's taxi stand for the purpose of picking up passengers at the Hotel.

Plaintiff in its complaint states that it has not been satisfied with the quality of service and lack of control over said taxicabs. It states that it has been unable to ensure that its guests and patrons are provided appropriate and quality service.

Unsatisfied with this lack of control over taxicabs that entered its property, the Hotel developed a proposed permit fee system to regulate taxicabs that use plaintiff's taxi stand. A summary of the proposed plan provides:

> The system will be governed by three documents which have been drafted by the Hotel: Permit, Agreement and Rules. In order to enter upon Hotel property to pick up passengers, a taxicab operator must have a Permit issued by the Hotel. The Permit is obtained by entering into an Agreement with the Hotel to comply with the Rules and paying a permit fee. The Rules require a reasonable standard of conduct for all operators and of appearance for all taxicabs while on Hotel property. Violation of the Rules may result in cancellation of the Permit. Furthermore, the Rules establish the basic permit fee of $120.00 per year, payable $10.00 per month in advance. This fee can be discounted to $60.00 per year for all cash payment in advance. Additionally, a further dis-

count can be secured by any taxicab company, association or fleet that wishes to obtain Permits for all or any number of its operators. This discount would apply to both the $10.00 and $60.00 payments and would be based on the schedule contained in the Rules.

Complaint, Exhibit A at 2.

A draft of this proposed permit fee system was sent, on October 29, 1982, to the Corporation Counsel with copies to various District of Columbia officials. Plaintiff states that it subsequently advised the District of Columbia that the proposed fees had been reduced by fifty percent.

On January 24, 1983, the Corporation Counsel determined that the said proposal violated the Act.

On June 15, 1983, plaintiff filed suit, challenging the constitutionality of the statute.

On November 10, 1983, the Court ordered that the parties provide additional information in order to help the Court make a determination on the merits. Pursuant to the terms of that order, plaintiff was to provide the Court with information on the economic impact that the Act has had on plaintiff. Further, the Court ordered defendants and intervenor-defendant to provide the Court with legislative history as to the purposes of the Act.

## II.

■ In pursuing this action, plaintiff asserts essentially two constitutional claims.[2] As its initial argument for relief, plaintiff makes a substantive due process claim that it "has been deprived under color of law of its right to use and regulate the use of its private property [and that] [i]t has been deprived of its property rights without due process of law." Complaint at ¶ 18. Plaintiff cannot survive this substantive due process claim. Under *Nebbia v. New York*, 291 U.S. 502, 525, 54 S.Ct. 505,

---

**2.** Because the Hotel proposes to exclude licensed taxicab drivers who do not pay a fee for use of its hack stand, the proposed permit fee system, on its face, violates the Act. Plaintiff does not dispute this conclusion as its sole claim in the complaint is that the Act violates its constitutional rights.

510, 78 L.Ed. 940 (1934), it is plain that the Hotel's right to use and manage its property is subject to the Government's power to regulate that use for the public good. Under traditional substantive due process analysis, government regulation of property rights will be upheld so long as it is not "unreasonable, arbitrary, capricious and that the means selected shall have a real and substantial relation to the object sought to be attained." *Id.; see also Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 84–85, 100 S.Ct. 2035, 2042–43, 64 L.Ed.2d 741 (1980). Plaintiff does not argue that the Act is without rational basis and appears to concede that any substantive due process claim is meritless.

The Hotel's primary argument is that the Act "necessarily works a taking of its property without compensation in violation of the fifth amendment to the Constitution." Plaintiff's Motion for Summary Judgment at 2.

■ In analyzing whether a certain government action is a taking without just compensation, the Supreme Court in *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), has developed a presumably workable test for determining that question.[3] Under *Loretto,* a court must first determine whether the level of government interference constitutes a "permanent physical *occupation*" or whether such interference may be described as a temporary "physical *invasion.*" *Id.* at 432, 102 S.Ct. at 3174 (emphasis in original). If it is the former, such an occupation must be characterized as a *per se* taking and no form of "interest balancing" can overcome that conclusion. *Id.* at 426, 102 S.Ct. at 3171. If, however, the level of governmental interference results in a temporary "physical invasion," that may be characterized as a presumptive taking. Under a presumptive taking analysis, the Court must make an *ad hoc* inquiry and

review a number of relevant factors to determine whether the challenged activity amounts to a taking. *Id.* at 432, 102 S.Ct. at 3174.

■ In pursuing its taking claim, plaintiff argues that the effect of the Act "requires that the Hotel, if it chooses to provide space on its property for cab operators, must constitute and dedicate such space for the use of all cab operators...." Motion of Plaintiff Hilton Washington Corporation for Summary Judgment at 2. Plaintiff asserts that this level of interference with its property does, in fact, amount to a complete and permanent physical occupation under *Loretto,* and, therefore, must be considered a taking *per se.*

The Court disagrees with plaintiff's assertion. The Act, which prevents hotels that maintain public taxi stands from discriminating against certain cab companies, cannot be likened to the permanent physical occupation that was endured by apartment building owners in *Loretto* who were required to permit a cable television company to install permanently certain cable television equipment upon its property, or by landowners in *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), where repeated overflights at low altitudes prevented the land from being put to any use, or by a coal company in *United States v. Pewee Coal Co.,* 341 U.S. 114, 71 S.Ct. 670, 95 L.Ed. 809 (1951), whose mines were seized and direction of operation of said mines was controlled by the government, or where a permanent right of way was granted without compensation to the landowner, *e.g., Western Union Telegraph Co. v. Pennsylvania Railroad,* 195 U.S. 540, 25 S.Ct. 133, 49 L.Ed. 312 (1904).

Plaintiff relies on *Delaware, Lackawanna & Western Railroad v. Morristown,* 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523 (1928), as support for the proposition that

---

**3.** The dissent in *Loretto* discusses at length the pitfalls of the majority's line of analysis, particularly where it seeks to draw distinction between "permanent physical occupations" and "temporary physical invasions." *Loretto v. Tele-* *prompter Manhattan CATV Corp.,* 458 U.S. at 443–56, 102 S.Ct. at 3180–87. This Court, however, will attempt to apply the line of analysis adopted by the majority.

the Act constitutes a complete and permanent physical occupation. In *Morristown*, the Supreme Court found that a town ordinance *requiring* the establishment of a public hack stand on petitioner's railroad station grounds amounted to a taking without just compensation. What distinguishes *Morristown* from the present case is that plaintiff here is under no such requirement. The Hotel is free to decide whether it wishes to dedicate a portion of its land for the use of taxicabs. Once, however, the Hotel has determined that it wishes to have the convenience of a taxi stand on its premises the Act demands that it exclude no licensed cab operator from using that facility. Unlike *Morristown,* no appropriation of land has occurred here.[4]

The Court notes that the type of governmental interference that is at issue here is similar to the interference that was at issue in *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). There the Court upheld a California State constitutional requirement that a privately owned shopping center must allow individuals to exercise reasonably their free speech and property rights. *Id.* at 83–84, 100 S.Ct. at 2041–2042. In *Pruneyard,* just as in the present case, no form of permanent physical occupation of appellant's land had taken place.[5]

The Supreme Court's opinion in *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), is also instructive. In *Heart of Atlanta* the appellant, a large hotel in Atlanta, Georgia, which restricted admittance of its patrons to white persons exclusively, sought to enjoin enforcement of the Civil Rights Act of 1964, arguing, *inter alia,*

that the act authorized a taking without just compensation. The Court, without elaboration, dismissed appellant's taking claim. *Id.* at 261, 85 S.Ct. at 359 (citing *Legal Tender Cases,* 12 Wall. 457, 551, 20 L.Ed. 287 (1870); *Omnia Commercial Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923); *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958)).

In the present case plaintiff objects to a District of Columbia requirement that a hotel not exclude any taxicab licensed to do business in the District of Columbia from using its public taxi stand. The level of interference by the District of Columbia is not a complete and permanent physical occupation and does not take from plaintiff the essential bundle of rights of possession, use, and disposal. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. at 435, 102 S.Ct. at 3176. The mere fact that plaintiff "may have been 'physically invaded' cannot be viewed as determinative" in a taking case. *Pruneyard Shopping Center v. Robins,* 447 U.S. at 84, 100 S.Ct. at 2042.

Because the provisions of the Act cannot be considered a taking *per se,* this Court, under a presumptive taking analysis must balance the interests at issue by making "an ad hoc inquiry in which several factors are particularly significant," *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. at 432, 102 S.Ct. at 3174, to determine whether the regulation, which permits a physical invasion of plaintiff's land, amounts to a taking. Those relevant factors include "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has

---

**4.** The Court notes that *Morristown* was decided long before the Supreme Court's landmark taking decisions in *Loretto, Pruneyard,* and *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), which provided, in detail, a mode of analysis for determining whether property has been taken without just compensation. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. at 426, 102 S.Ct. at 3171. Under this analysis *Morristown* presumably would not have the same outcome today. It is also worth noting that the

Supreme Court, since its modern-day taking decisions, has not embraced the holding in *Morristown.*

**5.** Plaintiff attempts to distinguish *Pruneyard* as strictly a first amendment case, but that is not so. The only first amendment issue considered by the Court was whether the owners of the public shopping center had their Federal constitutional rights violated by the requirement that it provide a forum for the speech of others.

interfered with the distinct investment-backed expectations ... [and] the character of the governmental action." *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978).

Plaintiff has conceded that the Act causes little economic impact on its business. Nor does it contend that it interferes with any of its investment-backed expectations. In fact, it is plain that nothing in the Act interferes in any way with the present uses of plaintiff's hotel. The only interference lies with plaintiff's "inability to ensure that taxicabs using its property render appropriate service to its guests and patrons." Plaintiff's Statement of Material Facts as to which there is No Genuine Issue at ¶ 9.

When reviewing the character of the action that the District has imposed on the Hotel, it is essential to look to the purposes of the Act to see what inequities it was designed to affect.

An examination of the legislative history of the Act reveals that one of its important purposes is that "[b]y preventing the operation of exclusive hackstands at District hotels, small and minority taxicab companies, as well as independent taxicab drivers, will gain access to a significant portion of the local client populace with the attendant economic benefits." Council of the District of Columbia, Committee Report on Bill 4–10, at 2 (September 22, 1981) ("Committee Report").

According to the Statement of Councilwoman Wilhelmina Rolark, sponsor of Bill 4–10, one of the purposes of the Act,

seeks to prohibit District hotel and restaurant owners or their representatives from leasing or renting their property for use as a taxicab or hack stand concession, to the exclusion of any District licensed taxicab driver.

The system of exclusive hack stands in the District effectively provides certain, primarily large cab companies, with an economic preference, insulating them from open competition in the District market, while smaller, less influential companies, and independent cab drivers

are in effect, segregated out of access to a significant portion of the local client population. The result is economic hardship for many who can least afford the cost of special privilege for others. District consumers also pay a price where these exclusive hack stands operate—fewer available cabs to serve their transportation needs.

Opening Statement of Councilwoman Wilhelmina Rolark, Exhibit 1, Defendants' Responses to the Court's Order of November 10, 1983.

At public hearings on the proposed law, numerous individuals referred to problems of discrimination caused by closed or exclusive hack stands. *See* Summary of Testimony, Committee Report at 4–8. It is particularly worth noting the Committee Report's summary of Mr. Baccus' statement which specifically addressed the issue of racial discrimination:

He stated that these exclusive hackstands originated out of the desire of white-owned taxicab companies to keep black drivers out of the lucrative hacking markets generated by the major hotels, the railroads and bus stations. He expressed that the only continuing purpose served by these leases is to discriminate against black drivers and he advocated instead a system of hackstands open to all drivers on a first come-first served basis.

Summary of Testimony of Vanders Baccus, Committee Report at 5.

This examination of the legislative history makes it plain that the City Council wanted to assure that District of Columbia hotels did not unfairly exclude licensed taxicabs from picking up passengers on their property. This type of government regulation neither takes economic value from plaintiff nor interferes with any possible economic expectations that it might have. As noted above, the Act does not require that taxis be permitted to trespass on the Hotel's property. It merely prevents plaintiff from being able to discriminate against some taxis in favor of others. The decision whether to provide a hack

stand at its hotel rests entirely with plaintiff. The argument that the Act amounts to a taking without just compensation is without merit.

Accordingly, the Court grants summary judgment for defendants and intervenor-defendant.