HILTON WASHINGTON CORPORA-
TION d/b/a Washington
Hilton, Appellant,

v.

DISTRICT OF COLUMBIA, et
al., Appellees.

No. 84–5756.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 19, 1985.

Decided Nov. 22, 1985.

Louis P. Robbins, with whom Allen Jones, Jr. and C. Francis Murphy, Washington, D.C., were on the brief, for appellant Hilton Washington Corp. d/b/a Washington Hilton.

Richard B. Nettler, Asst. Corp. Counsel of the District of Columbia with whom John H. Suda, Principal Deputy Corp. Counsel of the District of Columbia and Charles L. Reischel, Deputy Corp. Counsel of the District of Columbia, Washington, D.C., were on the brief for appellee, The District of Columbia.

Howard C. Davenport and Lloyd N. Moore, Jr. were on the brief for appellee, Public Service Com'n.

Before WRIGHT, MIKVA and FRIEDMAN,* Circuit Judges.

Opinion for the Court filed by Circuit Judge FRIEDMAN.

FRIEDMAN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Columbia, 593 F.Supp. 1288 (D.C.D.C.1984), granting summary judgment dismissing a complaint challenging the constitutionality of section 3 of the District of Columbia Taxicab Act of 1981, which makes it unlawful for any hotel to exclude any licensed taxicab driver from picking up passengers at the hotel's taxicab stand. We affirm.

I

Prior to the enactment of the District of Columbia taxicab law, described below, the appellant operated a taxicab stand on its

---

* Daniel M. Friedman, of the Court of Appeals for the Federal Circuit, sitting by designation pursu-

ant to 28 U.S.C. § 291(a).

property at the Washington Hilton Hotel. It regulated and controlled the taxicabs that it permitted to use the stand.

In 1981, the Council of the District of Columbia enacted the Taxicab Act of 1981 (Taxicab Act), which became effective on March 31, 1982. D.C.Code Ann. § 40–725 (1985 Supp.). Section 3 of that Act provides in pertinent part:

It shall be unlawful for any keeper or proprietor or agent acting for the keeper or proprietor of any licensed hotel in the District of Columbia to exclude any District licensed taxicab driver from picking up passengers at any hackstand or other location where taxicabs are regularly allowed to pick up passengers on the hotel premises.

Criminal penalties are provided for violation of this provision.

Since the effective date of the Taxicab Act, the appellant, in the words of the district court, "has permitted all taxicabs, licensed by the District of Columbia, to enter its property and use the Hotel's taxi stand for the purpose of picking up passengers at the Hotel."

The appellant was dissatisfied with the quality of service provided by, and its lack of control over, the taxicabs serving the hotel. It therefore formulated a plan under which all taxicabs serving the hotel would be required to obtain a permit. There would be an annual fee for the permit, which would decrease for multiple permits obtained by a company or fleet of taxicabs. To obtain a permit, the taxicab operator would be required to comply with the hotel's rules governing standards of conduct and appearance of taxicabs while on hotel property.

The appellant submitted its proposed permit plan to the District of Columbia Corporation Counsel for an opinion on the validity of the plan. The Corporation Counsel concluded that the plan would violate section 3 of the Taxicab Act.

Several months later the appellant filed the present suit in the United States District Court against the District of Columbia and certain of its officials. The suit sought a declaratory judgment that section 3 of the Taxicab Act is unconstitutional and an injunction barring enforcement of that provision against the appellant's proposed permit system. The complaint alleged that section 3 deprived the appellant "of its property rights without due process of law." The Public Service Commission of the District of Columbia, which regulates taxicabs in the District, intervened as a defendant.

The plaintiff moved for summary judgment, and the defendant moved to dismiss. The district court treated the latter motion as a motion for summary judgment, granted summary judgment in favor of the defendant, and dismissed the action. The court held that the appellant's substantive due process argument failed because the appellant did not contend that section 3 of the Taxicab Act lacked a rational basis. The court rejected the taking claim because

the Act does not require that taxis be permitted to trespass on the Hotel's property. It merely prevents plaintiff from being able to discriminate against some taxis in favor of others. The decision whether to provide a hack stand at its hotel rests entirely with plaintiff.

## II

The sole contention Hilton makes in its appeal to this court is that section 3 of the Taxicab Act effects a taking of its property. We agree with the district court that it does not do so.

A. In *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court "surveyed some of the general principles governing the Takings Clause." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982). In *Penn Central*, the Court pointed out that among the "factors that have particular significance" in determining whether "a particular [government] restriction" upon the use of property amounts to a taking are "[t]he economic impact of the regula-

tion on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations" and "the character of the governmental action. A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, see, *e.g., United States v. Causby*, 328 U.S. 256, [66 S.Ct. 1062, 90 L.Ed. 1206] (1946), than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." 438 U.S. at 124, 98 S.Ct. at 2659. "In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole...." *Id.* at 130–31, 98 S.Ct. at 2662.

In *Loretto*, the Court held that "a permanent physical occupation [of property] authorized by government is a taking without regard to the public interests that it may serve." 458 U.S. at 426, 102 S.Ct. at 3171. It pointed out, however, that "[a]s *Penn Central* affirms, the Court has often upheld substantial regulation of an owner's use of his own property where deemed necessary to promote the public interest." *Id.* The Court stressed "the distinction between a permanent physical occupation, a physical invasion short of an occupation, and a regulation that merely restricts the use of property," *id.* at 430, 102 S.Ct. at 3173, and reaffirmed "a State's broad power to impose appropriate restrictions upon an owner's *use* of his property." *Id.* at 441, 102 S.Ct. at 3179.

The application of these principles to what are "essentially ad hoc, factual inquiries," *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659, is illustrated by the decisions in those two cases and in *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). Only in *Loretto* did the Court hold that there was a taking. That case involved "a permanent physical occupation of property," 458 U.S. at 434, 102 S.Ct. at 3175, pursuant to governmental authorization, namely, the

installation of cable television facilities on the roof of an apartment house, and the holding rested squarely on applying "the traditional rule that a permanent physical occupation of property is a taking." 458 U.S. at 441, 102 S.Ct. at 3179.

*Penn Central* involved limitations upon the use of an air space above a building in New York City that resulted from the building's designation by the city as an historic landmark. *PruneYard* involved the distribution of pamphlets and the solicitation of signatures to a petition "on the property of a privately owned shopping center to which the public is invited," 447 U.S. at 76, 100 S.Ct. at 2038, which the State constitution was held to permit. In both cases the Court held that there had been no taking.

B. Under the foregoing principles, the application of section 3 of the Taxicab Act did not constitute a taking of the appellant's property.

There was no "permanent physical occupation of property," but only the temporary transient occupation of the taxicab stand as individual taxicabs discharged or picked up passengers at the hotel. The Act does not require the hotel to operate a taxi stand on its property. The decision to do so was made solely by the hotel, in order to further its business interests and without any government compulsion. The Act "merely restricts the use of property" by requiring that, if the hotel decides to operate a taxicab stand, it cannot exclude a licensed taxicab.

Section 3 of the Taxicab Act was designed to serve a valid public purpose. The district court determined, based on the legislative history of the Taxicab Act, that its purpose was "to assure that District of Columbia hotels do not unfairly exclude licensed taxicabs from picking up passengers on their property." The appellant states that the purpose was "the elimination of perceived economic discrimination." Section 3 thus represents an exercise of the District's "broad power to impose appropri-

ate restrictions upon an owner's *use* of his property."

Finally, the appellant has not shown that section 3 of the Taxicab Act has a significant "economic impact" upon it or "has interfered with distinct investment-backed expectations." To the contrary, as the district court noted, the appellant "has conceded that the Act causes little economic impact on its business. Nor does it contend that it interferes with any of its investment-backed expectations. In fact, it is plain that nothing in the Act interferes in any way with the present uses of plaintiff's hotel." The court correctly pointed out that the "type of government regulation" reflected in section 3 was designed "to assure that District of Columbia hotels did not unfairly exclude licensed taxicabs from picking up passengers on their property. . . . [I]t neither takes economic value from plaintiff nor interferes with any possible economic expectations that it might have."

C. The appellant contends, however, that *Delaware, Lackawanna and Western Railroad Co. v. Morristown*, 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523 (1928), compels the contrary conclusion. That case involved a quite different situation from the present one and does not support the appellant's position.

In *Morristown*, a railroad gave Welsh the exclusive right to park his taxicabs and solicit business upon the grounds of the railroad station. In response, the town of Morristown passed an ordinance that "declare[d] a space including that set aside by the petitioner for the use of Welsh's vehicles to be 'an additional public hackstand' and prohibit[ed] the parking of vehicles in other parts of the driveway." 276 U.S. at 190, 48 S.Ct. at 278. The Supreme Court held that by "designat[ing] and establish[ing]" a portion of the railroad's property as "an additional public hackstand," the ordinance "clearly transcend[ed] the power of regulation" and effected a taking of the railroad's property. *Id.* at 195, 48 S.Ct. at 279. The Court stated:

The railroad grounds, station, platforms, driveways, etc., are used by the petition-

er for the purposes of its business as a common carrier; and, while that business is subject to regulation in the public interest, the property used belongs to petitioner. The State may not require it to be used in that business, or take it for another public use, without just compensation, for that would contravene the due process clause of the Fourteenth Amendment.

*Id.* at 193, 48 S.Ct. at 279. The Court pointed out:

The enforcement of the ordinance here assailed would operate to deprive petitioner of the use of the land in question and hand it over to be used as a public hack stand by the individual defendants and others. As to them, and so far as concerns its use as a public hack stand, the driveway was petitioner's private property and could not be so appropriated in whole or in part except upon the payment of compensation.

*Id.* at 194, 48 S.Ct. at 279.

The Morristown ordinance effected a taking of the railroad's property because it required the railroad "to hand its property over" to others to use "as a public hack stand" and thereby "appropriated" the property. In contrast, section 3 of the Taxicab Act does not require the Hilton Hotel to turn over any portion of its property to anyone. Under section 3, the Hilton may refuse to admit any taxicab to its property. Section 3 requires only that if the hotel decides to operate a taxi stand on its property, it cannot deny any licensed taxicab admission to the stand. Unlike the ordinance in *Morristown*, section 3 of the Taxicab Act is "a regulation that merely restricts the use of property." *Loretto*, 458 U.S. at 430, 102 S.Ct. at 3173.

The appellant also discerns support for its position in *Black & White Taxicab Co. v. Brown & Yellow Taxicab Co.*, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928). In that case a railroad, by agreement, gave the respondent taxicab company the exclusive right to enter upon its trains, depot and premises to solicit business. The petitioner was a competing taxicab company which, according to the respondent, the

railroad had also permitted to solicit business on its property. The respondents sued the railroad and the petitioner for failure to carry out the exclusive dealing agreement. The petitioner responded that the agreement was illegal.

The Supreme Court, applying federal common law in a diversity case, upheld the agreement. The only reference in the opinion to a taking was the following dictum:

> And, as the State is without power to require any part of the depot ground to be used as a public hack stand without providing just compensation therefor, then *a fortiori* such property may not be handed over for the use of petitioner without the consent of the owner.

*Id.* at 529, 48 S.Ct. at 407.

That dictum merely restates the holding in *Morristown* that a government requirement that a railroad make part of its property available for use as a public hack stand constitutes a taking of the property. As we have shown, that principle has no applicability in this case because section 3 of the Taxicab Act does not require the appellant to provide a public taxicab stand on its property.

The judgment of the district court is *affirmed.*